THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
THOMAS RYAN *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 83—0017, 83—0159 cons.

Opinion filed December 28, 1984.

Steven Clark and Cheryl Berdelle, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and John G. Murphy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Following a joint bench trial in the circuit court of Cook County,

defendants, Thomas Ryan and Edward Joseph, were found guilty of delivery of a controlled substance (Ill. Rev. Stat. 1981, ch. 56½, par. 1401) and sentenced to six-year terms of imprisonment.[1] On appeal defendants contend that: (1) the testimony of the State's crime lab chemist should have been stricken when the State allegedly "failed to refresh the witness' recollection after she testified that she had no independent recollection" of the tests she performed on the controlled substances; and (2) the State's alleged failure to establish a chain of custody raises a reasonable doubt that the substance tested was not the same substance obtained from the defendants.

Deputy Cook County Sheriff Thomas Braglia testified: On April 6, 1981, he was assigned to the Northeast Metropolitan Group and, through an informant, met defendant Ryan at the latter's apartment. Braglia agreed to purchase "quaaludes" from Ryan. On April 10, 1981, Braglia gave Ryan $250 in prerecorded money in exchange for 100 quaaludes.

On April 17, 1981, Braglia called Ryan at his home and stated he wished to purchase some cocaine. On that same day, Braglia accompanied Ryan to the home of Ryan's drug "source" and there purchased cocaine for $100 in prerecorded money. On May 5, 1981, Braglia again purchased cocaine from Ryan and Ryan's "source" with $200 in prerecorded money. On May 29, 1981, Braglia purchased two ounces of cocaine from Ryan, defendant Joseph and a third person. Ryan and Joseph were arrested at that time.

Patricia Haloyda testified for the State: She is a forensic chemist and she received from Braglia various sealed packages containing alleged controlled substances with reference to this case. She conducted various tests on each package of substances. One bag contained 100 tablets of methaqualone; the others tested positive for the presence of cocaine. On cross-examination Haloyda testified that she prepared "worksheets" in connection with the tests she performed. These worksheets contained a description of the package, the exhibit number, the weight of the substances and the results of the tests administered. On cross-examination, she admitted that she had no independent recollection of the tests she performed on the substances in the instant case, and that her testimony was based on her "memorization" of the tests and test results from her review of her worksheets prior to trial. Defendants' attorneys then moved to strike her testi-

---

[1]These defendants were tried jointly with codefendants Andrew Polizzi and Marc Black. Black was found not guilty. Polizzi was found guilty, but his case is not now before us.

mony on the ground that it was based on the memorization of a document not introduced into evidence. The trial court denied the motion.

At the conclusion of the trial, the court found each defendant guilty of the offense charged. After denying their post-trial motions, the court sentenced each defendant to six years' imprisonment. Ryan then pleaded guilty to three other unlawful delivery charges pending against him, and was sentenced on these charges to two concurrent terms of three years and one concurrent term of two years.

On appeal, defendants first contend that the trial court erred in denying their motion to strike Haloyda's testimony "where the state failed to refresh the witness' recollection after the witness stated that she had no independent recollection of her testimony." They argue that a witness can only testify to "those facts or events within the witness' recollection and knowledge" and that "refreshing recollection, not memorization, is the only recognized way in which counsel may revive the witness' power to recall without introducing the memorandum itself into evidence." The State responds that the court properly denied the defendants' motion to strike the chemist's testimony because "she had independent recollection of the laboratory tests" and because the witness testified that "her memory was refreshed after she reviewed the worksheets before trial."

In our opinion, both parties have mischaracterized the issue presented here. We do not perceive it to involve the procedural question of the manner in which a witness' memory may be refreshed, but rather one which relates to cross-examination and discovery. The record makes clear that Haloyda did not, while testifying, state that her memory was exhausted or that it required refreshing. Nor was any effort made to refresh her memory while she was on the witness stand. Instead, during cross-examination, she stated that she had reviewed her worksheets prior to trial, and that her testimony was based on the contents of those worksheets. The worksheets were not admitted into evidence.[2]

---

[2]The parties appear to confuse the doctrines of "refreshed recollection" and "past recollection recorded." In the former situation a witness who testifies that his memory is exhausted is permitted to examine a document in order to refresh his recollection. The manner and means by which a witness' memory is refreshed is within the discretion of the court. *People v. Van Dyk* (1976), 40 Ill. App. 3d 275, 352 N.E.2d 327.

Past recollection recorded allows the introduction into evidence, as an exception to the hearsay rule, of a record prepared or adopted by the witness when the witness testifies that he lacks present independent recollection of the occurrence, and that the record reflected his knowledge of the occurrence at the time it was prepared. See *People v. Olson* (1978), 59 Ill. App. 3d 643, 375 N.E.2d 533.

In a similar case, the Illinois Supreme Court held that opposing counsel is entitled to examine those documents reviewed before trial by the witness:

"Had reference been made by the officer to the captain's report [which report was reviewed by the witness prior to testifying] during his testimony for purposes of refreshing his recollection, we assume no question could be raised as to the necessity for its exhibition to defense counsel for his examination and use during cross-examination. We see no substantial or logical difference between that situation, and the one where the witness examines the refreshing document prior to stepping into the courtroom. The opportunity for mischief or error is equally present regardless of where or when the inspection of the documents occurs. As Wigmore states: 'For though there is no objection to a memory being thus stimulated, yet the risk of imposition and the need of safeguard is just as great.' (3 Wigmore on Evidence, 3rd ed., sec. 762, p. 111.)" *People v. Scott* (1963), 29 Ill. 2d 97, 111, 193 N.E.2d 814.

■ The right of opposing counsel to review the documents relied upon by a witness relates to the defendant's right to cross-examine adverse witnesses. (*People v. Clemons* (1979), 72 Ill. App. 3d 860, 391 N.E.2d 128.) Such documents are considered to be a part of the discovery materials to which a defendant is entitled (*People v. Holiday* (1970), 47 Ill. 2d 300, 265 N.E.2d 634), and must be produced when so requested by defense counsel. *People v. Olson* (1978), 59 Ill. App. 3d 643, 375 N.E.2d 533; *People v. Hartgraves* (1964), 31 Ill. 2d 375, 202 N.E.2d 33.

■ In the instant case the State did offer to provide to defense counsel for use in cross-examination copies of the worksheets Haloyda reviewed before she testified. Defense counsel did not accept this offer. Under these circumstances we conclude that no error occurred.

■ Defendants' second, and final, contention is that the State's alleged "failure to establish a chain of custody raises a reasonable doubt that the substance tested was not the same substance obtained from the defendants." They assert that Braglia's testimony regarding his handling of the two ounces of cocaine after obtaining it from defendants indicates that he "failed to observe sufficient protective measures to assure that the evidence admitted at trial was the same evidence seized from defendants."

Defendants argue that Braglia's testimony established that after

he seized the evidence from defendants on the evening of May 29, he returned to his office, but that he was unsure whether he sealed the evidence in an envelope that evening or on the morning of the following day. They state that Braglia further testified "that he left his office after depositing the evidence there for an unknown period to talk with the defendants, although he denied this later in his testimony. Further, Braglia disclosed that during an undetermined period of time, in which the evidence remained unsealed and unidentified, approximately 45 people had access to his office." Defendants conclude that this "careless handling of the evidence" casts doubt on the character of the State's exhibits as tested by the chemist.

The State responds that the cocaine was properly admitted because Braglia's testimony was that he "held the cocaine on his person" until turning it over to the crime lab for analysis. They deny that Braglia testified that at any time he left the cocaine in his office.

In our opinion, while Braglia's testimony was at times confused, he did not state that he had left the evidence in his office; rather, he testified that upon returning to his office he kept the evidence on his person, sealing it either immediately upon his return, or a few hours thereafter. While Braglia stated that at some point he had left his office, he also said that he took the evidence with him.

Since the State has the burden of showing that the substance obtained from the defendants is the same substance which was tested by the chemist, the State is required only to demonstrate a reasonable probability that the exhibit has not been altered in any important aspect. (*People v. Stevenson* (1980), 90 Ill. App. 3d 903, 413 N.E.2d 1339.) The State must show that reasonably protective measures were taken to ensure that the substance taken from defendants was the same substance tested by the chemist. *People v. Oswald* (1979), 69 Ill. App. 3d 524, 387 N.E.2d 886.

In establishing the chain of custody, the State is not required to exclude all possibility of tampering but, rather, in the absence of any tangible suggestion of tampering, alteration or substitution, it is sufficient if the State proves a reasonable probability that the article has not been altered. *People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688.

We believe the State met its burden in this case. Braglia's testimony that the evidence was not out of his sight until it was inventoried, if believed, was sufficient foundation for admission of this evidence. The defendants' speculation of alteration fails to destroy the admissibility of the evidence. *People v. Martine* (1984), 121 Ill. App.

3d 793, 460 N.E.2d 456.

For the reasons stated herein, defendants' convictions are affirmed.

Affirmed.

HARTMAN, P.J., and STAMOS, J., concur.