THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CURT HERMANN, Defendant-Appellant.

First District (1st Division) No. 1—86—1437

Opinion filed December 5, 1988.—Rehearing denied January 23, 1989.

Stephen M. Komie, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Judy L. Groeneveld, and Douglas J. Bank, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Curt Hermann, was charged by information with two counts of delivery of 30 grams or more of a controlled substance containing cocaine, in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(2)). The defendant waived his right to a jury trial and was convicted on both counts, following a bench trial in the circuit court of Cook County. The trial judge sentenced the defendant to two concurrent terms of seven years and fined him $4,500.

Glenn Schneider testified that in July 1983, when he was an undercover agent with the Illinois Department of Law Enforcement, he had several telephone conversations with the defendant concerning the sale of cocaine. In one of the conversations, the defendant told Schneider that he had a "ton" of cocaine, and the parties then agreed that Schneider would pay $2,725 for an ounce and a quarter of cocaine.

Schneider met the defendant on July 22. The defendant gave him two white envelopes, each containing a clear plastic bag filled with white powder. Schneider gave the defendant $2,720 in prerecorded bills. Schneider testified that he put the envelopes in either his shirt or his sock.

Following this transaction, Schneider met with Illinois Department of Law Enforcement agents and Hoffman Estate police officers at a prearranged location. Schneider initialed and dated the envelopes that the defendant had given him, put each envelope in a clear plastic bag, and then put the bags in an evidence envelope, which he also initialed, dated and sealed. He then locked the evidence envelope in his

briefcase, where it remained until July 25, when he delivered it to Debra Jurasic, a crime lab analyst. On cross-examination, Schneider testified that he did not have continuous possession of the briefcase from July 22 to July 25.

Following the July 22 transaction, Schneider and the defendant had another telephone conversation and agreed that the defendant would sell Schneider two ounces of cocaine for $2,050 an ounce. Schneider met the defendant on August 3. Schneider gave the defendant $4,100 in prerecorded bills, and in exchange he received two more white envelopes containing plastic bags full of white powder. The defendant told Schneider that he would sell him more cocaine, but no more than two ounces at a time and only at half hour intervals. When this transaction was completed, the defendant was arrested.

Following the arrest of the defendant, Schneider went to the Hoffman Estates police department and once again signed and initialed the envelopes that the defendant had given him. Each envelope was then placed into a clear plastic bag and the bags were then put into an evidence envelope. Schneider sealed and initialed the envelope and delivered it to Jurasic on August 4. Schneider could not recall where the evidence envelope was kept overnight.

Debra Jurasic testified that she had a B.A. in chemistry and that she had trained for five months with the Bureau of Forensic Sciences Laboratory, learning to identify controlled substances. She had been employed by the Illinois Department of State Police and the Bureau of Forensic Scientists Laboratory for the past 8½ years. She had analyzed substances for the presence of cocaine on approximately 6,000 to 7,000 occasions and had never made any mistakes. The trial court received Jurasic as an expert witness over the defendant's objections.

Jurasic stated that she received the first evidence envelope, which was sealed, on July 25. When she opened the envelope, she found two sealed clear plastic bags, each containing a white envelope, which in turn contained a clear plastic bag full of white powder. The two bags were described as exhibits 1A and 1B. Jurasic weighed the powder and performed five different tests on the samples of the powder. Exhibit 1A weighed 28 grams and tested positively for the presence of cocaine. She determined that exhibit 1A was 48% pure cocaine. Exhibit 1B weighed 6.8 grams and was found to contain cocaine, with a 52% purity.

On August 4, Jurasic received the second evidence envelope from Schneider. All seals on this envelope were intact. The two bags contained in this evidence envelope were also weighed and tested for the presence of cocaine. Sample 1A weighed 27.7 grams and indicated

that cocaine was present. Sample 1B also tested positively for the presence of cocaine and weighed 27.6 grams. Jurasic did not test either sample for purity. Jurasic testified that she did not calibrate the scale which she used to weigh the samples, but she did subtract the weight of the container used to hold the samples. In addition, Jurasic stated that no one else checked or verified her results.

Dr. James O'Donnell, an assistant professor of pharmacology and assistant director of pharmacy, testified for the defense as an expert witness. He stated that the generally accepted scientific practice, when testing for controlled substances, is to run the test twice. In addition, the scale used to weigh a sample should be calibrated before and after each weighing, and the results of any test should be verified by another person.

On cross-examination, Dr. O'Donnell admitted that he had only performed a test for the presence of cocaine on one occasion and that he did not perform any tests on the powder involved in this case, although he was not prevented from doing so. Dr. O'Donnell stated that, in his opinion, the samples did not contain more than 30 grams of pure cocaine, but he agreed that the weight of each sample was over 30 grams. Dr. O'Donnell also stated that he would not conclude, based on the tests performed by Jurasic, that the samples contained cocaine.

The defense then called Dr. Vincent Papa as an expert witness. Dr. Papa was a research associate for the University of Illinois department of pathology. Dr. Papa did not test the samples involved in this case, but testified that he would not conclude that the samples definitely contained cocaine, based on the tests that Jurasic performed. He also concluded that each sample weighed over 30 grams, but did not contain more than 30 grams of pure cocaine. Dr. Papa also testified that he had reviewed Jurasic's work on one occasion, in the circuit court case of People v. Gates. In the Gates case, Dr. Papa tested a substance that allegedly contained cocaine and concluded that there was no cocaine present. Jurasic had also tested a sample of the substance in Gates and determined that there was a trace amount of cocaine present.

The trial court found the defendant guilty on both counts of delivery of a controlled substance. A hearing was held in aggravation and mitigation, following which the defendant was sentenced to two concurrent terms of seven years' imprisonment in the Illinois Department of Corrections and was fined $4,500. Defendant then filed this appeal.

The first issue that the defendant raises on appeal is that the State failed to establish a sufficient chain of custody, and that, there-

fore, the trial court erroneously admitted the cocaine into evidence. The defendant argues that there was a fatal break in the chain of custody from the time when he sold the alleged cocaine to Schneider until Schneider delivered it to Jurasic. According to the defendant, this fatal break occurred because Schneider was not in continuous possession of his briefcase from July 22 to July 25. There was also a fatal break in the chain of custody of the August 3 alleged sample of cocaine, because Schneider could not recall where he kept the sample between the time he purchased it from the defendant until he delivered it to Jurasic on August 4.

As a result of this alleged break in the chain of custody, the defendant argues that the alleged cocaine absorbed moisture, thus increasing its weight to over 30 grams. The State, on the other hand, argues that the chain of custody was established beyond a reasonable doubt because there was a hand-to-hand delivery of the evidence. Moreover, the evidence was placed in envelopes that were initialed, dated and sealed, and were received by Jurasic in this sealed condition.

■ A reviewing court will not disturb the trial court's admission of evidence, absent an abuse of discretion and a showing of prejudice to the defendant. (*People v. Holman* (1987), 157 Ill. App. 3d 764, 775, 510 N.E.2d 1139, 1146.) The State must lay an adequate foundation in order to admit real evidence (*People v. Slaughter* (1986), 149 Ill. App. 3d 183, 186, 500 N.E.2d 662, 664), and in order to provide an adequate foundation, the State may establish a chain of custody that shows to a reasonable probability that the evidence has not been altered or tampered with since it was seized. (*Slaughter*, 149 Ill. App. 3d at 186, 500 N.E.2d at 664.) However, all possibility of tampering or alteration need not be excluded (*Holman*, 157 Ill. App. 3d at 775, 510 N.E.2d at 1146; *People v. Ryan* (1984), 129 Ill. App. 3d 915, 919, 473 N.E.2d 461, 464), and, thus, the State need only show that it took reasonably protective measures since the substance was seized (*Ryan*, 129 Ill. App. 3d at 919, 473 N.E.2d at 464) and that the substance has not been changed in any material respect (*Holman*, 157 Ill. App. 3d at 775, 510 N.E.2d at 1146).

We agree with the State that a sufficient chain of custody was established in this case. There was no suggestion that the seals on the evidence envelopes had been tampered with before Jurasic received them. Schneider testified that the July 22 sample remained in his locked briefcase until July 25. The August 3 sample also remained under his control, even though he could not remember its exact location. Schneider personally handed the cocaine to Jurasic on both occasions.

Jurasic stated that the seals were intact on both evidence envelopes.

The facts in this case are similar to those in *People v. Borawski* (1978), 61 Ill. App. 3d 774, 378 N.E.2d 255, where an undercover agent testified that he kept a plastic bag full of a controlled substance in his possession for six days, but did not state where or how he kept the evidence. The agent had initialed, dated and sealed the bag, and it was still sealed when it was delivered to an evidence officer. (*Borawski*, 61 Ill. App. 3d at 780, 378 N.E.2d at 260.) This court held that the evidence had been properly admitted and that a presumption of tampering did not arise merely because the agent did not testify concerning where the bag was for six days.

■ Likewise, in this case, the facts are sufficient to create a reasonable probability that the evidence had not been altered or contaminated in any way, even though Schneider could not recall exactly where the evidence was at all times. The defendant's claim that moisture entered the sample is sheer speculation, and speculation is insufficient to support a claim of tampering. (*People v. Martine* (1984), 121 Ill. App. 3d 793, 800, 460 N.E.2d 456, 461.) The evidence, therefore, was properly admitted.

The defendant's second issue on appeal is that the trial court improperly restricted his redirect examination of Dr. Papa and improperly restricted his impeachment of Jurasic. Concerning the redirect examination, defendant argues that he was denied the opportunity to question Dr. Papa concerning whether Jurasic's weighing techniques were accurate, whether the weight of the samples could be conclusively determined, and whether moisture would affect the weight of the samples. The restriction, according to the defendant, prevented him from presenting evidence tending to negate his guilt.

■ A defendant has the right to use any reasonable opportunity to present evidence tending to negate his guilt, but the trial court retains discretion to resolve questions of the nature and character of the examination and the manner of the presentation of evidence. (See *People v. Columbo* (1983), 118 Ill. App. 3d 882, 966, 455 N.E.2d 733, 794; *People v. Calloway* (1979), 79 Ill. App. 3d 668, 673, 398 N.E.2d 917, 920.) Furthermore, the trial court may exclude cumulative or repetitive testimony, and the extent to which cumulative testimony is received is in the trial court's discretion. (*People v. Partee* (1987), 157 Ill. App. 3d 231, 268, 511 N.E.2d 1165, 1189-90.) The scope of redirect examination is also within the trial court's discretion and the court's ruling should be reversed only upon a showing of clear abuse of discretion, resulting in manifest prejudice to the defendant. *People v. Washington* (1984), 127 Ill. App. 3d 365, 382, 468 N.E.2d 1285, 1297.

■ We find no abuse of discretion on the part of the trial court in restricting the redirect examination of Dr. Papa. The defendant had already asked Dr. Papa questions on direct concerning Jurasic's weighing techniques and concerning Dr. Papa's opinion as to the weight of the samples. The questions on redirect, thus, were merely cumulative of the testimony already presented.

■ Similarly, questions regarding whether moisture would affect cocaine were also properly restricted. This theory was merely speculative on the defendant's part and the line of questioning was beyond the scope of cross-examination. Furthermore, there was no basis in the facts presented at trial to provide a foundation for the question. The elements of a hypothetical question must have an evidentiary basis in the record and should contain all material facts to form the basis of any opinion requested. (*People v. Chua* (1987), 156 Ill. App. 3d 187, 192, 509 N.E.2d 533, 536.) The defendant here has failed to show that the trial judge abused his discretion by not allowing the defendant's hypothetical question concerning the effect of moisture on cocaine.

The defendant also argues that his impeachment of Jurasic was improperly restricted because he was not permitted to introduce the verdict from the Gates case into evidence. He claims that this restriction prejudiced his opportunity to present evidence in his defense. The State contends that the verdict in Gates was not relevant to the present case.

■ Generally, a party seeking to impeach a witness may use any matter which is properly impeaching. (*Columbo,* 118 Ill. App. 3d at 966, 455 N.E.2d at 793.) If, however, the matter is collateral, then such evidence cannot be used to impeach a witness because it will only tend to confuse the jury and waste time. (*Columbo,* 118 Ill. App. 3d at 966, 455 N.E.2d at 793-94.) In this case, the defendant had already impeached Jurasic by introducing evidence that she and Dr. Papa reached different conclusions regarding whether the substance in Gates contained cocaine. We agree with the State that whether the Gates defendant was convicted or acquitted was clearly a collateral matter, and the trial judge properly sustained the State's objection to the question as irrelevant.

■ The third issue that the defendant raises on appeal is that the State did not prove him guilty beyond a reasonable doubt. However, a reviewing court will only set aside a conviction upon a showing that the evidence is so unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. (*People v. Johnson* (1986), 114 Ill. 2d 170, 190, 499 N.E.2d 1355, 1363.) The trier of fact determines the credibil-

ity of witnesses and the weight to be accorded disputed evidence, and its finding will not be reversed unless the verdict is against the manifest weight of the evidence. *People v. Kaludis* (1986), 146 Ill. App. 3d 888, 893, 497 N.E.2d 360, 363-64.

The defendant contends that there is a reasonable doubt as to his guilt because the State did not properly prove a chain of custody. Defendant also asserts that there is a reasonable doubt as to his guilt because Jurasic only had a B.A. in chemistry and because she did not follow scientifically approved procedures in testing and weighing the cocaine.

■ We find that the evidence in this case was sufficient to prove the defendant guilty, beyond a reasonable doubt, of delivery of more than thirty grams of a controlled substance. First, we disagree with the defendant that the State failed to prove a sufficient chain of custody. Second, Jurasic was admitted as an expert witness through her experience, thus, whether she had a B.A. degree or no degree is irrelevant. The fact that Jurasic testified that her procedures were scientifically correct, and the defendant's experts disagreed with her procedures, goes only to the weight of her testimony. Hence, based on an examination of the record here, the trial court's finding that Jurasic was a credible witness is not against the manifest weight of the evidence. We further note that Jurasic was the only expert to actually test the cocaine.

■ The defendant's fourth and final issue on appeal is that the statute under which he was convicted, section 401(a)(2) of the Illinois Controlled Substances Act, is unconstitutional because it imposes a mandatory minimum six-year prison term for anyone convicted of delivering 30 grams or more of a substance containing cocaine, whether or not they have a prior criminal record. (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(2).) When a statute is challenged on equal protection grounds, its classification is presumed valid and the party challenging the statute must show its invalidity. (*People v. Mayberry* (1976), 63 Ill. 2d 1, 9, 345 N.E.2d 97, 101.) The classification will be upheld if there is any reasonable basis for the classification. (*Mayberry*, 63 Ill. 2d at 9, 345 N.E.2d at 101.) When there is a due process challenge to a statute, the statute must be reasonably designed to remedy the evil that the legislature has determined to be a threat to the public. *People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029, 1032.

The defendant claims that the statute is unconstitutional because it applies a heavier penalty to him for delivering more than 30 grams of diluted cocaine, despite the fact that this was his first offense. The

defendant states that he is automatically subject to a six-year prison term, while a convicted criminal who delivers only 29 grams of pure cocaine may receive probation. The State argues that the constitutionality of this statute was upheld by the Illinois Supreme Court in *People v. Mayberry*, and, therefore, defendant's argument is moot.

In *Mayberry*, the court upheld a classification scheme providing for punishment based on the amount of substance containing cannabis, rather than on the amount of pure cannabis. (*Mayberry*, 63 Ill. 2d at 4, 345 N.E.2d at 99.) The court held that this statute was reasonable because the legislature "may have believed that any given amount of drug can be distributed to a greater number of people and thus have a greater potential to be harmful if it is mixed with another substance." (*Mayberry*, 63 Ill. 2d at 9, 345 N.E.2d at 101.) Since the *Mayberry* decision, the second, third, fourth, and fifth Illinois appellate districts have upheld similar classification schemes involving other drug offenses. See *People v. Castro* (1987), 151 Ill. App. 3d 664, 503 N.E.2d 376; *People v. Bradi* (1982), 107 Ill. App. 3d 594, 437 N.E.2d 1285; *People v. Yettke* (1981), 95 Ill. App. 3d 365, 420 N.E.2d 194; *People v. Rhoades* (1979), 74 Ill. App. 3d 247, 392 N.E.2d 923; *People v. Behnke* (1976), 41 Ill. App. 3d 276, 353 N.E.2d 684.

We agree that the graduated penalty scheme, based on the amount of substance containing a controlled substance, is constitutional and that *Mayberry* is dispositive of the issue. There are several rational reasons that the legislature could have concluded that a diluted drug is as dangerous as a pure drug. As stated in *People v. Behnke* (1976), 41 Ill. App. 3d 276, 279-80, 353 N.E.2d 684, 687, reasons for a drug's classification, other than its purity, may include the need to punish drug traffickers more severely than petty distributors; the desire to limit the general population's access to controlled substances; and the desire to deter drug abuse. The defendant's argument that this was his first offense is irrelevant under the statutory scheme here. The statute states that "[t]he treatment of one who is convicted of delivery of a certain amount of a substance containing a controlled substance is not *** based upon an irrebuttable presumption that the person convicted is a trafficker, but upon the legislature's reasonable perception of the threat to society in delivery of a large quantity of that substance by *any* person." (Emphasis added.) *Behnke*, 41 Ill. App. 3d at 280, 353 N.E.2d at 687.

The statute, therefore, is not unconstitutional even though its penalties are based on the amount of substance containing a controlled substance. The need to eliminate the threat to society from drugs, whether sold by a major trafficker or a small dealer, as recog-

nized by the statute, provides a reasonable basis for the statute's classification.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed. Additionally, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, and *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request that the defendant be assessed $75 as costs for the State's defense of this appeal and incorporate it as part of our judgment.

Affirmed.

MANNING and O'CONNOR, JJ., concur.