THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
RONALD GALBREATH, Defendant-Appellee.

Fourth District   No. 4—88—0484

Opinion filed April 28, 1989.

Nancy Owen, State's Attorney, of Charleston (Kenneth R. Boyle, Robert
J. Biderman, and Michael K. Blazicek, all of State's Attorneys Appellate
Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Ronald Galbreath was charged July 31, 1987, with driving under the influence of alcohol in violation of section 11—501(a) of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)). Prior to trial on June 21, 1988, the defendant's attorney filed a motion *in limine* requesting no testimony be permitted as to the defendant's blood-alcohol test. After an offer of proof by the State, the trial court granted the motion *in limine*. The State subsequently moved to terminate trial and filed a certificate of substantial impairment.

The State appeals pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) and *People v. Flatt* (1980), 82 Ill. 2d 250, 257, 412 N.E.2d 509, which allows the State to appeal an "order *** the substantive effect of which results in dismissing a charge ***, suppressing evidence." Here the State alleges an abuse of discretion by the trial court in granting the motion *in limine* since foundation for the admission of blood-alcohol tests was adequate.

Although the defendant did not file a brief on appeal, an automatic reversal is not required. The trial record is simple, and we are able to decide the case on the basis of the merits in the State's argument. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.) We reverse.

At around 3 a.m. on July 31, 1987, defendant was cited for driving under the influence of alcohol (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)) by City of Charleston police officer Brenda Arnold. After a one-vehicle motorcycle accident, the defendant was taken to Sarah Bush Lincoln Hospital for treatment of injuries. At the hospital, Debra Wildes, a medical technician, took blood samples from the defendant in the presence of the arresting officer. The officer placed the samples in an evidence kit and later took them to a police evidence locker. Charleston police officer John Paddock removed the blood samples from the evidence locker and sent them by certified mail to the Illinois State Police Forensics Lab in Springfield, Illinois. There a forensic toxicologist examined the samples to determine blood-alcohol content.

Prior to trial, defendant filed a motion *in limine* to prevent the State from referring to the results of the blood tests. The defendant alleged a lack of foundation since the State did not follow proper procedures outlined in the Department of Public Health's "Standards and Procedures For Withdrawal of Blood and/or Urine Samples for Chemical Analysis of Alcohol or other Drug Content" (77 Ill. Adm. Code §510.110 (1985)). Before ruling on the motion, the trial judge re-

quested an offer of proof by the State. At hearing, the State presented testimony of the arresting officer, the medical technician who drew the blood samples, the officer who mailed the samples to the forensics lab, and the forensic toxicologist who received and analyzed the defendant's blood samples. The defendant claimed a proper foundation was not established for the admission of the blood sample into evidence. The trial judge agreed and granted the motion stating, "I don't think the evidence I have heard is satisfactory. I don't think her (the medical technician's) statement in a general way about the procedure she generally followed standing alone is sufficient foundation."

■ The primary issue in this case is whether blood-sampling procedures were properly followed according to Illinois Department of Public Health standards (77 Ill. Adm. Code §510.110 (1985)). The record shows the medical technician adhered to these standards.

The samples were "collected in the presence of the arresting officer." (77 Ill. Adm. Code §510.110(a)(1) (1985).) A trained and authorized phlebotomist collected the blood sample. (77 Ill. Adm. Code §510.110(a)(2) (1985).) The blood samples were properly labeled. (77 Ill. Adm. Code §510.110(a)(4)(D)(i) (1985).) The blood samples were "delivered to a laboratory certified by the Department." (77 Ill. Adm. Code §510.110(a)(4)(E) (1985).) Two blood samples were retained. 77 Ill. Adm. Code §§510.110(a)(3), (a)(4)(A) through (a)(4)(C) (1985).

Sections 510.110(a)(3) and (a)(4)(A) through (a)(4)(C) of the Illinois Administrative Code (Code) require special procedures to be followed so nothing interferes with the integrity of the blood samples. This includes cleaning the skin with disinfectants containing no alcohol and storing the blood samples in containers with anticoagulants and preservatives which would not interfere with the alcohol-content analysis.

■ At the hearing, the medical technician testified she did not specifically remember performing these special procedures on the defendant, as she draws around 100 samples a week. However, she testified she was familiar with these procedures and had never deviated from them. The trial court ruled her testimony insufficient to prove these special procedures were carried out. We disagree.

Evidence of the routine practice of an organization is admissible to prove an action was committed, but only if corroborated. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.4, at 179 (4th ed. 1984).) In this case, the testimony of the arresting officer, who was familiar with the special procedures, and the forensic toxicologist corroborated the medical technician's testimony.

*People v. Miller* (1988), 166 Ill. App. 3d 155, 159, 519 N.E.2d 717, 720, held a nurse's testimony of procedures was sufficient to deter-

mine whether an act was committed if (1) the nurse performed the action often enough that the procedure is "habit," and (2) the procedure is similar enough to the alleged conduct. "[H]abit evidence of an individual or custom *** must be sufficiently detailed and specific, and the situations involved must be similar enough to give rise to a reliable inference and not to speculation or conjecture." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.4, at 55 (4th ed. Supp. 1989).

The record shows the standards outlined in *Miller* were met. First, the medical technician's drawing blood samples 100 times a week was sufficient to constitute "habit." The technician's corroborated testimony had no inconsistencies indicating the procedures were not properly followed. The second requirement of *Miller* was met since the alleged conduct was the same as the conduct testified to. Thus, the medical technician's testimony adequately proved the special procedures were followed.

■ The "Standards and Procedures for Withdrawal of Blood and/or Urine Samples for Chemical Analysis of Alcohol or other Drug Content," section 510.110(a)(D)(ii), of the Code requires the identity and integrity of the sample to be "maintained through collection to analysis and reporting." (77 Ill. Admin. Code §510.110(a)(D)(ii) (1985).) Since it is impossible for one to identify a blood sample by mere inspection, the State must show a chain of custody of "sufficient completeness to render it improbable that the item has been tampered [with], exchanged or contaminated." (*People v. Slaughter* (1986), 149 Ill. App. 3d 183, 186, 500 N.E.2d 662, 664.) The State must demonstrate the evidence has not been altered or substituted with a reasonable degree of probability. "[T]he State is not required to exclude all possibility of tampering ***, alteration or substitution[;] it is sufficient if the State proves a reasonable probability that the article has not been altered." *People v. Ryan* (1984), 129 Ill. App. 3d 915, 919, 473 N.E.2d 461, 464.

Although the State's offer of proof could have better established a chain of custody, no evidence was submitted to show the chain of custody was insufficient. The record shows the blood samples of the defendant went from the arresting officer's evidence kit to an evidence locker, and were mailed to the forensics lab. There was a "reasonable probability" the samples were not altered. The chain of custody maintained the identity and integrity of the blood samples.

The record shows the Illinois Department of Public Health's standards, set forth in the Administrative Code, were followed. This, along with other evidence presented in the State's offer of proof, pro-

vided sufficient foundation for the results of the defendant's blood test. The trial court abused its discretion in granting the motion *in limine*. We reverse the trial court's ruling.

Reversed and remanded.

LUND and SPITZ, JJ., concur.