THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TANYA BOYCE, Defendant-Appellant.

First District (2nd Division)   No. 1—90—0912

Opinion filed March 31, 1992.

Michael Pelletier and Alan Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Following a bench trial defendant, Tanya Boyce, was convicted of possession with intent to deliver more than 1 but less than 15 grams of a substance containing cocaine. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2).) She was sentenced to the mandatory minimum sentence of four years' imprisonment without probation. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(2)(D) (section 5—5—3(c)(2)(D)).) She contends on appeal that (1) the mandatory minimum sentence of section 5—5—3(c)(2)(D), without possibility of probation, periodic imprisonment or conditional discharge violates the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, §2) and the equal protection clauses of the Illinois and United States Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2); and (2) this penalty is disproportionate to the nature of the offense in violation of article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, §11) and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII).

Defendant was tried by the court concurrently with Eddie Brisbon, codefendant, who requested a jury trial. The following facts were adduced at trial.

Chicago police officer Michael McMeel testified that on October 25, 1988, he and his partner, Officer Edward May, after observing a large amount of narcotics trafficking near a liquor store at 1600 South Homan Avenue, set up surveillance. Officer McMeel, who had worked that area for 10 years, was a tactical officer and had observed thousands of drug transactions. Waiting behind a porch at the front of the building with a pair of binoculars, he observed defendant and codefendant standing three feet apart in the area of 1602 South Homan Avenue. The area was well lit by street lights and light from the liquor store.

Defendant was near a telephone booth; codefendant conversed with others. After receiving money, codefendant walked over to defendant and handed her the money. She put it in her purse. Defendant then reached into her right-hand jacket pocket, produced a white folded paper packet and handed it to codefendant, who gave it to the person who handed him the currency. This occurred three times in less than 10 minutes.

Officer McMeel radioed for Officer May to pick him up in the alley. After reentering the vehicle, they proceeded to the observed area. Officer McMeel approached defendant, identified himself and removed 65 white paper packets, which he believed to be cocaine, from her right-hand jacket pocket. Her purse contained $105 and white pieces of paper which he thought were notes regarding narcotics trafficking.

After arresting defendant and advising her of her *Miranda* warnings, defendant told Officer McMeel that on the paper were two job descriptions, a holder and a seller, adding that she "held" the "dope" for $125 per week. The officer described defendant as a holder and codefendant as the salesperson. He thought defendant was not a major street dealer, but was working for one.

Chicago police officer Edward May's testimony tracked that of Officer McMeel.

Laurie Lewis, a forensic chemist employed by the Chicago police department, testified that she received 65 stapled white paper packets. She tested seven, which contained 1.57 grams of cocaine. The total weight of all the packets was estimated at 14.5 grams. An additional 18 packets also tested positive for cocaine. The cocaine in the 25 tested packets weighed a total of six grams.

Defendant's and codefendant's motions for findings in their favors were denied. The State rested. Following codefendant's case, rebuttal and surrebuttal, the jury was excused and defendant put on her case.

Defendant testified that on October 25, 1988, at about 9:30 p.m., she was standing outside a store at 16th and Homan talking to her friends. Two or three other people were present. At this point, she had no controlled substances in her possession.

After buying food at the liquor store, her friend Tim asked her if she "still wanted to help hold some packs." Previously she had told him "no," but this time she agreed, putting the packets in her pocket, which she possessed when she was arrested. Her friend also gave her a black bag which contained paper and money. Defendant denied awareness of the contents or writing names or numbers on the paper while she was there. She knew, however, she was given drugs to hold.

She related that Officer McMeel grabbed her, "pet[ted]" her, removed the packets and the pouch, handcuffed her and put her in the car. Although she knew codefendant, she denied he was taking money and drugs back and forth from her. At no time did she deal, sell, walk to cars or bring people to her for drugs. She only held them. She did not agree to deal or for codefendant to act as her courier. Defendant denied speaking to codefendant that night about selling drugs.

On cross-examination, she denied that Officer McMeel recovered the amount claimed from her or that she told police she was selling drugs with codefendant. The person who gave her the cocaine had already left.

The jury found codefendant not guilty of possession of a controlled substance with intent to deliver; however, the court found defendant guilty of possession with intent to deliver. The court sentenced her to four years in custody of the Department of Corrections.

I

Defendant asserts that the sentencing provision which denies probation for conviction of possession of more than five grams of a substance containing cocaine with intent to deliver (section 5—5—3(c)(2)(D)) violates due process and equal protection. Under this section, defendant will not be allowed probation, a term of periodic imprisonment or conditional discharge for a violation of section 401(b)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2) (section 401(b)(2))), which relates to more than five grams of a substance containing cocaine or an analog thereof. In addition to cocaine, section 401 makes it illegal to possess with intent, manufacture or deliver several other controlled substances. Defendant asserts that by enacting section 5—5—3(c)(2)(D), which denies probation only for cocaine offenses under section 401, due process and equal protection were violated.

■ The General Assembly has wide discretion in classifying offenses and penalties. Equal protection requires that similarly situated persons be treated equally, however. (*People v. Brooks* (1989), 179 Ill. App. 3d 767, 770, 534 N.E.2d 1063.) In determining whether a statutory provision violates the equal protection clause, it is presumed the classification is valid and will be upheld upon any reasonable basis. (*People v. Hermann* (1988), 180 Ill. App. 3d 939, 947, 536 N.E.2d 706.) Here the classifications created are violations of section 401 for possession with intent to deliver cocaine and possession with intent to deliver other controlled substances.

■ The purpose of section 401(b)(2) is to punish delivery of cocaine more severely than that of other drugs due to the crack epidemic, the unique availability of the drug and because the ingestion of a small amount could lead to addiction, serious disablement or death. (*People v. Pehrson* (1989), 190 Ill. App. 3d 928, 547 N.E.2d 613.) For these reasons, a stiffer penalty is justifiable for cocaine-related crimes. (See *Brooks*, 179 Ill. App. 3d at 770.) Defendant asserts that there is no rational basis for singling out cocaine, that there is no proof cocaine is more harmful to the body than some other substances, and that cocaine, in having been included as a schedule II drug along with opium, opium derivatives, amphetamines, methamphetamines, phencyclidine and others (Ill. Rev. Stat. 1987, ch. 56½, par. 1206), requires that its involvement not be treated so severely. These contentions pale beside the legislature's concerns, as identified in *Pehrson*, and must be rejected.

■ Additionally, defendant maintains that section 5—5—3(c)(2)(D) violates the due process clause of the Illinois Constitution. Due process is violated when a provision is not reasonably designed to remedy the evils which the legislature determined a threat to the public health, safety and general welfare. *People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029 (*Bradley*).

■ The intent of the Illinois Controlled Substances Act is not to treat users or occasional petty distributors as severely as large-scale unlawful purveyors and traffickers of controlled substances. This is effectuated in part by allowing latitude in sentencing discretion to the courts. (Ill. Rev. Stat. 1987, ch. 56½, par. 1100.) Based upon this, defendant asserts that the unavailability of a probation option in favor of defendant, who held a small amount of cocaine and had minimum contact with drug trade, contravened the legislative intent.

Another intent, however, is to provide for the differences between different types of controlled substances and to provide for different degrees of control over the variations. (Ill. Rev. Stat. 1987, ch. 56½, par. 1100.) Section 5—5—3(c)(2)(D) is reasonably designed to remedy the problem identified by the legislature.

Defendant's reliance upon *Bradley* and *People v. Wagner* (1982), 89 Ill. 2d 308, 433 N.E.2d 267, is misplaced. In *Bradley*, due process was found violated because a higher penalty was imposed for possession than for delivery. This was clearly against legislative intent. (*Bradley*, 79 Ill. 2d at 418.) In *Wagner*, it was found to be against legislative intent for one to incur greater punishment for pretending to sell a controlled substance than for actually selling a controlled substance. *Wagner*, 89 Ill. 2d at 313.

## II

■ Defendant contends that the sentencing provision is disproportionate to the nature of the offense, violating article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, §11), and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII).

The argument made is that by requiring a mandatory penitentiary sentence for possession with intent to deliver, the legislature has ignored both the seriousness of the offense and the objective of restoring the offender to useful citizenship. It does not allow the court to look to each offender's character and recognize her rehabilitative potential. Defendant further asserts that the allowance of probation would not prevent a court from imposing a prison sentence when appropriate.

Defendant was 19 years old with no prior arrests. The probation officer noted that "[defendant seemed] to be trying to straight [sic] out her life. It seems she was in the wrong place at the wrong time." The court expressed dismay in that the person who put the drug deal together was not being punished, asserting that "I feel very much for [defendant], but I have to sentence [her] within the range of sentences that the legislature sets out." The court added, however, that it hoped this would send a message to defendant and other people that this was the result of defendant's choice and saying "no" was the better route to take. Due to the absence of any prior contact with the law, the court sentenced her to the minimum of four years.

Section 11, article I of the Illinois Constitution (Ill. Const. 1970, art. I, §11) provides for punishment to be proportionate to the seriousness of an offense with the objective of restoring the offender to useful citizenship. Section 1—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 1—2) establishes a legislative purpose to prescribe penalties proportionate to the seriousness of offenses, permitting recognition of differences in rehabilitation possibilities and preventing arbitrary and oppressive treatment.[1] It is questionable whether the eighth amendment to the United States Constitution makes such a guarantee. *Harmelin v. Michigan* (1991), 501 U.S. ___, 115 L. Ed. 2d 836, 111 S. Ct. 2680.

---

[1] It should be noted that section 5—5—3(c)(2)(D) does not fall under this act but falls under the Unified Code of Corrections; however, this act has substantially the same purposes. Ill. Rev. Stat. 1987, ch. 38, par. 1001—1—2.

The punishment here was not cruel and unusual because defendant was found with 65 packets, 25 of which, weighing six grams, tested positive for cocaine. The others were not tested. Additionally, she received only four years' imprisonment, the minimum allowed by statute. The sentence is not disproportionate to the offense and did not violate either constitution.

Affirmed.

SCARIANO and DiVITO, JJ., concur.