THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY BENTLEY, Defendant-Appellant.

Third Distict     No. 79-937

Opinion filed August 29, 1980.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce Black, State's Attorney, of Pekin (John X. Breslin and Rita Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant Harry Bentley was convicted by a jury in the Circuit Court of Tazewell County of the offense of theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)). He was subsequently sentenced to the Department of Corrections for a term of five (5) years. On appeal from his conviction he contends that the circumstantial evidence introduced by the State was insufficient to prove him guilty beyond a reasonable doubt of the offense of theft under an accountability theory (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(a)). We agree, and accordingly reverse.

At approximately 8 p.m. on August 10, 1979, a theft occurred at the Liquor Station, a liquor store located in Morton, Illinois. Working at the store the night of the theft were Catherine Clark and her nephew. Ms. Clark, a witness for the State, testified that at about 8 p.m. the defendant and his co-defendant, Douglas Taylor, entered the store. No one else was

in the store at the time. While Taylor walked to the back of the store and out of Ms. Clark's view, the defendant walked down the first two aisles.

As Bentley walked down the second aisle, he picked up a bottle of chocolate mint cordial and asked Clark if she had any smaller bottles. Clark responded by telling Bentley that they had miniature bottles. After the defendant told Clark that he would purchase one of the miniature bottles, Clark went to the cash register and rang up the sale. Bentley at first handed Clark a $2 bill to pay for the 84-cent purchase, but then stated he did not want to use the $2 bill and wished to purchase something else. The defendant then walked to the end of the counter, which was about six or seven feet from the cash register, and pointed to a bottle of wine. Leaving the drawer of the cash register open, Clark followed the defendant to the end of the counter. The cash register was located about six feet from the door, and was visible from where both Bentley and Ms. Clark were standing.

While the defendant looked at the bottle of wine, he dropped some coins behind the counter. Stating that he had a bad back, he asked Ms. Clark to pick up the coins for him. Ms. Clark did so, and handed the coins back to the defendant. Although she testified on direct examination that he dropped the coins a second time, on cross-examination she admitted that in a statement she gave to a Morton police detective there was no reference to the coins being dropped a second time. Ms. Clark also testified on direct examination that the defendant told her "Now, don't be afraid of me. Come on. I won't hurt you."

After the defendant made this alleged statement, Ms. Clark stated she heard the bell on the door ring. Because she was picking up the coins at the time, she did not see who had entered or left the store. She asked the defendant "who went out," and the defendant replied that he didn't see anybody. Immediately, Ms. Clark ran to the cash register and found that all of the $20 bills were missing. A subsequent check of the cash register receipts revealed that approximately $618 had been stolen. After Ms. Clark telephoned the police, Bentley was joined at the counter by Taylor. The two men purchased a bottle of wine and a can of soda pop.

Officer Mike Burgess testified that he arrived at the liquor store in response to a radio dispatch. Upon entering, he saw the defendant and Taylor talking to Ms. Clark. After asking Bentley and Taylor for some identification, he asked them how they got to the liquor store. In response they said they had hitchhiked. Burgess then took Bentley and Taylor outside and asked them to empty their pockets. Burgess testified that the defendant had several dollars' worth of change in his pockets and carried coins in every pocket of his clothing.

An auxiliary police officer, Dwayne Snyder, testified that he drove past the liquor store at approximately 8 p.m. on the night of the theft. Snyder was driving his private vehicle, a 1976 pickup truck. At that time

he observed a white Cadillac parked along the side of the liquor store. Although someone was sitting in the Cadillac, he could not tell how many people were inside. He also saw two black males standing near the right front corner of the Cadillac between the car and the store. Snyder testified that the two men, whom he could not identify, "stood at the edge of the door and kind of peeked around the door into the, in through the glass of the door for a few seconds" and then entered the store. Snyder then drove around the block and came back to the store because he wanted to get the Cadillac's license plate number. As he neared the store, he saw a black male come out of the store and enter the Cadillac on the driver's side. The Cadillac then drove out onto the street. Snyder followed the Cadillac, and as he did so received a radio dispatch that the liquor store had been robbed. The Cadillac first circled the block and returned to the corner on which the liquor store was located, and then proceeded around town, finally stopping at the Ro-Bo Car Wash. The car wash is located approximately four blocks from the liquor store. Snyder, who had followed the Cadillac to the car wash, was joined there by another police officer and apprehended the driver of the Cadillac, Bobby Stapleton, and his companion, Janet Barnes, a white female. Stapleton and Barnes were then taken back to the liquor store, and at that time they were informed that they, Taylor and the defendant were under arrest. When Barnes was subsequently searched at the police station, $600 in $20 bills was found in her pantyhose.

■■ On appeal from his conviction for theft, the defendant contends that the evidence introduced by the State was insufficient to prove his guilt under an accountability theory beyond a reasonable doubt. Whenever the issue on appeal from a criminal conviction is whether the State has met its burden of proof, the responsibility of a reviewing court is clear. " '[I]t is always the duty of this court to examine the evidence in a criminal case, and if it is so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt the conviction will be reversed.' " *People v. Howard* (1979), 74 Ill. App. 3d 870, 875, 393 N.E.2d 1084, 1088, quoting *People v. Coulson* (1958), 13 Ill. 2d 290, 296, 149 N.E.2d 96, 99.

■■■ In the case at bar the State's case against Bentley was comprised entirely of circumstantial evidence. " 'The rule is that to support a conviction based on circumstantial evidence, the facts produced must not only be consistent with the defendant's guilt, but they must also be inconsistent with any reasonable hypothesis of innocence. * * * This rule does not contemplate that the trier of facts is required to search out a series of potential explanations compatible with innocence and elevate them to the status of a reasonable doubt, but a jury's verdict will be reversed on grounds of insufficient evidence where there is a reasonable and well founded doubt of guilt and the verdict is found to be palpably contrary to

the weight of the evidence [citation]'." *People v. Wright* (1976), 43 Ill. App. 3d 458, 460-61, 357 N.E.2d 224, 226, quoting *People v. Harris* (1975), 34 Ill. App. 3d 906, 908, 340 N.E.2d 327, 329.

■■ Examining the evidence introduced by the State in this case, we believe the jury verdict of guilty was erroneous and consequently a reversal is mandated. This is not a case in which the jury, in order to acquit the defendant, was required to "search out a series of possible explanations compatible with innocence and elevate them to the status of a reasonable doubt." (*Wright*, 43 Ill. App. 3d 458, 460-61, 357 N.E.2d 224, 226; compare *People v. Hancock* (1978), 65 Ill. App. 3d 694, 382 N.E.2d 677; *People v. Johnson* (1975), 32 Ill. App. 3d 36, 335 N.E.2d 144; *People v. Minish* (1974), 19 Ill. App. 3d 603, 312 N.E.2d 49.) Rather, this is a case in which the State simply failed to exclude every reasonable hypothesis of innocence. (See *Wright*; *People v. Trapps* (1974), 22 Ill. App. 3d 1029, 318 N.E.2d 108.) Every action taken by the defendant in this case is capable of innocent interpretation. We find no inculpatory inference to be drawn from the fact that when first seen the defendant was standing near Stapleton's car, that he looked into the store before entering, that he apparently changed his mind about what he wanted to purchase, or that he dropped the coins on the floor. Further, and most importantly, there is absolutely no evidence linking the defendant with Stapleton. Contrary to the prosecutor's assertion during both the opening statement and closing argument, there is no evidence in the record that the defendant got out of Stapleton's car, nor do we believe that to be a reasonable inference to be drawn from the evidence presented. Regarding the defendant's "you don't have to be afraid of me" comment to Ms. Clark, its probative value is considerably lessened by the fact that the precise context in which it was made is unknown. From the record we cannot ascertain what motivated the defendant to make that statement. We decline to draw an inculpatory inference from a statement capable of a number of innocent interpretations equally as reasonable as the one which is adverse to the defendant.

Because we believe that the evidence introduced by the State is insufficient to prove the defendant guilty beyond a reasonable doubt, we need not reach the merits of the other issues raised by the defendant on appeal.

The judgment of the Circuit Court of Tazewell County is reversed.

Reversed.

ALLOY, P. J., and SCOTT, J., concur.