THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WADE STALLINGS, Defendant-Appellant.

First District (4th Division)   No. 1—88—0859

Opinion filed March 28, 1991.—Rehearing denied May 6, 1991.

1034

JOHNSON, J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Bruce Landrum, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Donna Lambert, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a bench trial, the defendant Wade Stallings was convicted of murder and sentenced to a prison term of 24 years. He con-

tends on appeal that he was not proved guilty beyond a reasonable doubt and that his sixth amendment right to present a defense was violated because essential evidence was destroyed. The defendant also contends that he was prejudiced by the admission of certain hearsay evidence and that the trial court abused its discretion in refusing to grant a continuance.

The defendant was charged with the murder of 81-year-old Constantine Karapanos. The victim was found lying on the floor of his ransacked house on June 11, 1979, and was taken to the hospital where he died two days later. In November of 1986, a fingerprint that had been found at the scene was entered into the police department's new Automatic Fingerprint Identification System and led to the identification of the defendant. The defendant was arrested in Milwaukee, Wisconsin, on January 6, 1987.

Prior to trial, the defendant filed a motion to dismiss the indictment alleging that evidence essential to the defense, including certain X rays and tissue samples from the victim, had been destroyed as a result of the length of time between the crime and the indictment. A report interpreting the X rays showed that CAT scans of the head were negative. At a hearing on the motion, the defendant presented the testimony of Dr. James Hicks. Dr. Hicks testified that he disagreed with the medical examiner's conclusion that the victim died from craniocerebral injury with subarachnoid hemorrhage and internal abdominal injury with perforation of the intestine and acute peritonitis. According to Dr. Hicks, the head injuries suffered by the victim were superficial and did not contribute to the death. Peritonitis caused by a ruptured or perforated bowel was the cause of death. However, because there was no sign of external trauma to the abdomen, Dr. Hicks concluded that the peritonitis had occurred naturally. He testified that external trauma always accompanies internal injury, and that a microscopic analysis of the victim's tissue samples could have shown the presence of blood clots or infarction of the bowel. An affidavit from Roy Domes, the administrator of the medical examiner's office, stated that the victim's tissue samples were preserved by the office and were subsequently destroyed during, and as part of, the regular tissue sample management procedures.

At the conclusion of the hearing, the trial court denied the defendant's motion to dismiss on the grounds that he was not prejudiced by the destruction of the X rays and tissue samples.

At trial, the victim's daughter, Helen Karapanos, testified that when she arrived home from work at 5:10 p.m. on June 11, 1979, she found her father lying on the floor of the living room. There were

blood splatters on the walls of the front hallway. After alerting her mother, Helen asked her father what had happened. He said that when he entered the vestibule of the building, there were two black men waiting for him. They beat him, forced him to open the door to his apartment, then beat him again and left. A hearsay objection to this testimony was overruled.

Helen told the police that a camera, a typewriter, jewelry and approximately $100 were missing. Her stereo had been taken from the top of her dresser and left on the bed. She had purchased the stereo five years earlier and it had not been out of the apartment since that time. She testified that she did not know the defendant and had never seen him in her home.

Officer Thomas Kelly, an evidence technician, testified that he found a fingerprint on the stereo and lifted the print. Officer Theatrice Patterson of the latent fingerprint unit testified that prior to 1986 it was necessary to have a suspect's name in order to search through the master files to match a fingerprint. However, under the new automatic system, "open" or unidentified fingerprints could be submitted for a search. The fingerprint found on the stereo was submitted, and the computer supplied the names of five suspects including the defendant.

Patterson then manually compared the fingerprint found on the stereo with the defendant's fingerprint. The lifted print was 60% of a full print impression, but Patterson testified that this did not affect the identification. He found 19 points of comparison and charted 10 points to illustrate his trial testimony. Patterson testified in great detail as to the points of comparison and concluded that the fingerprint found on the stereo was the defendant's fingerprint. Patterson testified that one unexplained dissimilarity would void the identification but that he observed no such dissimilarities.

Dr. Tae An, an assistant Cook County medical examiner, testified that he performed an autopsy on the victim on June 13, 1979. The victim had two black eyes and multiple bruises and abrasions on the face and head. Dr. An detected a subarachnoid hemorrhage, several rib fractures and a perforated small intestine. He determined the cause of death to be craniocerebral injury with subarachnoid hemorrhage, and an internal abdominal injury with perforation of the intestine and acute peritonitis. Dr. An observed no adhesions, infarction or strangulation of the intestine which would indicate that the peritonitis occurred naturally. He stated that internal trauma is not necessarily characterized by visible external injury. He concluded that the intestinal perforation was caused by a blow to the abdomen.

Dr. An had read the police reports before performing the autopsy and knew the victim had been beaten. The medical reports showed that the X rays and CAT scan, which were taken to show possible fracture or hemorrhaging, were negative. The reports indicated that the victim had gotten out of bed several times in the hospital and had to be restrained. According to Dr. An, a microscopic examination of the tissue samples was unnecessary because the examination of the victim showed that the peritonitis did not occur naturally. On cross-examination, he stated that the peritonitis was the main cause of death and that the head injury contributed to the death by causing stress to the body.

The defendant presented the testimony of Sergeant Porter, who interviewed Helen Karapanos on the day of the victim's funeral. According to Porter, Helen said that her father was disoriented and unable to tell her what happened.

The defendant testified that he was 16 years old at the time of the incident and worked at odd jobs such as painting and exterminating in the vicinity of the victim's house. He could not recall ever being in the victim's apartment and denied hitting or robbing the victim.

Defense counsel then informed the court that the next witness, Dr. James Hicks, was not in court and would not be able to testify until sometime after February 15, 1988. This would have caused a two- to three-week delay in the trial. The court, noting that the matter had been pending for a very long time and that it had instructed the defendant to have all of his witnesses present that day, denied the continuance.

At a hearing on the defendant's motion for a new trial, the court stated that the victim's statement to his daughter when she found him was not relevant to the defendant's guilt and was disregarded by the court.

The defendant first contends that he was not proved guilty beyond a reasonable doubt. Specifically, he argues that Dr. An's testimony was insufficient to prove that the victim's death was caused by criminal activity, that the fingerprint evidence was insufficient to establish that the defendant was the offender, and that there was no evidence linking the burglary to the victim's injuries.

In support of his argument, the defendant cites *People v. Bentley* (1980), 87 Ill. App. 3d 1033, 409 N.E.2d 530, for the proposition that where the only evidence supporting a conviction is circumstantial, the guilt of the accused must be so thoroughly established as to exclude every reasonable hypothesis of innocence. However, in *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344, the Illinois

Supreme Court recently held that reasonable doubt is the test which should be applied in reviewing the sufficiency of the evidence in all criminal cases regardless of whether the evidence is direct or circumstantial. The reasonable hypothesis of innocence standard is no longer viable. Furthermore, the judgment will not be disturbed unless the evidence, viewed in the light most favorable to the prosecution, is such that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.

The defendant's first argument concerning the sufficiency of the evidence is that Dr. An's testimony did not establish that the acute peritonitis which caused the victim's death resulted from criminal activity rather than from natural causes. In making this argument, he relies upon the testimony of Dr. James Hicks at the hearing on the motion to dismiss that internal abdominal injury could not have occurred in the absence of visible external injury to the abdomen. The defendant notes that the victim's tissue samples, which could have established that the victim's peritonitis resulted from natural causes, had been destroyed by the hospital in the course of its regular procedures.

■ To prove murder, the State must establish beyond a reasonable doubt that the death was caused by criminal activity. (*People v. Brackett* (1986), 144 Ill. App. 3d 442, 446, 494 N.E.2d 610, *aff'd* (1987), 117 Ill. 2d 170, 510 N.E.2d 877.) The court in *Brackett* stated that the adequacy of such evidence depends upon the autopsy, the defendant's acts related to the victim's physical condition at death and the explanation of the reasons underlying the cause of death. *Brackett*, 144 Ill. App. 3d at 447, 494 N.E.2d at 613.

■ Dr. An testified that the autopsy he performed showed that the victim died primarily from acute peritonitis and that the head injury contributed to the death by adding stress to the body. He testified that the autopsy revealed no evidence of adhesions, infarction or strangulation of the intestine which would indicate that the peritonitis occurred naturally. Dr. An therefore concluded that the peritonitis was caused by trauma to the abdomen. He explained that such internal injury could occur even in the absence of visible external injury to the abdomen. Although Dr. An's testimony conflicted with that of Dr. Hicks in this regard, we believe that his opinion was supported by fact and reason and constituted a sufficient basis for the trial court's conclusion that the victim died as a result of criminal activity rather than from natural causes.

The second argument made by the defendant concerning the sufficiency of the evidence is that the fingerprint evidence was insufficient to establish his identity as the offender. The defendant maintains that the testimony of the fingerprint expert, Officer Theatrice Patterson, lacked credibility and that the evidence did not exclude the possibility that the fingerprint could have been left on the stereo at some other time.

In our view, the record fully supports the trial court's determination that Officer Patterson's testimony established beyond a reasonable doubt that the fingerprint left on the stereo belonged to the defendant. Patterson's testimony was detailed, convincing and unshaken by cross-examination. Although the defendant asserts in his brief that Patterson admitted that another expert "would probably disagree" with his explanations, the record fails to support this assertion. Furthermore, Helen Karapanos testified that she purchased the stereo five years earlier and that it remained in her room since that time. The defendant suggests that because he testified that he did odd jobs in the victim's neighborhood, it was reasonable to conclude that he was in the victim's apartment at some time prior to the offense and that the fingerprint was impressed at that time. The defendant, however, testified that he did not recall ever being in the victim's apartment. We believe the defendant's suggestion is too speculative to create a reasonable doubt of guilt.

Finally, the defendant maintains that the evidence was insufficient to establish that the victim's injuries were inflicted by the same persons who committed the burglary. The defendant suggests that the victim could have been beaten by a second group of burglars, that the burglary could have occurred earlier in the day and the victim could have fallen down the stairs upon discovering it, or that the victim could have gotten into a fight with a friend or neighbor after the burglary. The evidence presented at trial established that the victim's daughter found the victim lying on the floor of the apartment, which had been ransacked. The clear and reasonable inference from this is that he had been beaten by the person or persons who had committed the burglary. The defendant's suggestions constitute nothing more than speculation and are insufficient to create a reasonable doubt of guilt.

The defendant next contends that his sixth amendment right to present a defense was violated because essential evidence in the form of X rays and tissue samples had been destroyed. Hospital reports, however, showed that the X rays were negative. Because these reports were available and favorable to the defense, the destruction of

the X rays did not prejudice the defendant. The defendant maintains that the destruction of the tissue samples was prejudicial to him because a microscopic examination of the samples might have shown that the victim's peritonitis occurred naturally.

■■ Where the State fails to disclose to the defendant material exculpatory evidence, the good or bad faith of the State is irrelevant. (*Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97.) However, "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have subjected to tests, the results of which might have exonerated the defendant." (*Arizona v. Youngblood* (1988), 488 U.S. 51, 57, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337.) Unless a defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333.

■■ In the case at bar, the best that can be said is that a microscopic examination of the tissue samples might have shown that the victim's peritonitis resulted from natural causes. However, there is no indication whatsoever that bad faith played a part in the failure to preserve the tissue samples. An affidavit from the administrator of the medical examiner's office stated that the samples were initially preserved, but later destroyed as a part of regular tissue management procedures. The defendant has thus failed to show that a violation of his constitutional rights occurred.

■■ The defendant next contends that the trial court erred in allowing the State to introduce testimony of the victim's statement to his daughter when she found him. He claims that the statement constitutes hearsay and does not fall into the excited utterance exception. Although the trial court overruled the defendant's objection to the testimony in question, it later stated that the testimony was irrelevant and that the court did not consider it in reaching its determination of guilt. Even absent the victim's statement, the evidence is sufficient to sustain the defendant's conviction. Accordingly, we believe that even if we were to accept the defendant's argument that the statement was hearsay, he has not established prejudice.

The defendant's final contention is that the trial court abused its discretion in refusing to grant him a continuance to secure the presence of Dr. James Hicks. Dr. Hicks had previously testified at a hearing on the defendant's motion to suppress the indictment. Essentially he stated that in his opinion, the victim's peritonitis resulted from natural causes. The court denied the request for a continuance, but

stated that it would read the transcript of Dr. Hicks' earlier testimony.

■■ ■ The grant or denial of a continuance rests within the sound discretion of the circuit court, and its ruling will not be disturbed on review absent a clear abuse of that discretion. (*People v. Sargent* (1989), 184 Ill. App. 3d 1016, 1022, 540 N.E.2d 981.) A defendant seeking a continuance to secure the presence of a witness must make an offer of proof of that witness' proposed testimony. (*People v. Sargent*, 184 Ill. App. 3d 1016, 540 N.E.2d 981.) In making an offer of proof, the defendant must explicitly state what the proffered testimony would reveal and not merely allude to what might be divulged by the testimony. *People v. Sargent*, 184 Ill. App. 3d 1016, 540 N.E.2d 981.

■■ The defendant in the case at bar stated that it was necessary to have Dr. Hicks testify at trial to rebut the testimony of Dr. An. Although the defendant states in his brief that a reading of Dr. Hicks' earlier testimony was insufficient, neither in his brief nor in his argument to the trial court did he explain why it was insufficient or what specific testimony would be offered to rebut Dr. An's testimony. Under these circumstances, we do not believe that the trial court's denial of a continuance constituted an abuse of discretion.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LINN, J., concurs.

JUSTICE JOHNSON, dissenting:

I respectfully dissent. I find that defendant's constitutional right to due process was violated because the People failed to prove defendant guilty of murder beyond a reasonable doubt. I find that defendant was not proved guilty beyond a reasonable doubt because the fingerprint evidence was insufficient to link him to this crime.

"[I]t is not for the defendant to establish his innocence, but for the People to establish his guilt." (*People v. Benson* (1960), 19 Ill. 2d 50, 61.) In *People v. Weinstein* (1966), 35 Ill. 2d 467, the Illinois Supreme Court held:

> "It is a fundamental doctrine of our system of criminal jurisprudence that the law presumes the innocence of an accused until he is proved guilty beyond a reasonable doubt. [Citations.] The presumption is 'founded on the first principles of justice, and is intended, not to protect the guilty, but to prevent, so far

1042

as human agencies can, the conviction of an innocent person.' [Citation.] Equally basic is the rule of law that the burden is on the prosecution to prove beyond a reasonable doubt the commission of the crime charged and to establish by the same degree of proof the perpetration of the crime by the person accused; that is to say, the prosecution has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime. [Citations.] The burden of such proof never shifts to the accused, but remains the responsibility of the prosecution throughout the trial." *Weinstein,* 35 Ill. 2d at 469-70.

See *People v. Brown* (1978), 57 Ill. App. 3d 528, 531.

Defendant has correctly noted that fingerprint evidence is circumstantial evidence. (*People v. King* (1985), 135 Ill. App. 3d 152, 155.) Our supreme court has held that in order to justify a conviction based upon circumstantial evidence, "circumstantial evidence must be of such a nature as to produce a reasonable and moral certainty that the accused committed the crime." *People v. Magnafichi* (1956), 9 Ill. 2d 169, 173; *People v. Ware* (1980), 82 Ill. App. 3d 297, 303.

Our supreme court also made the following mandate with respect to the sufficiency of fingerprint evidence:

"In order to sustain a conviction solely on fingerprint evidence, fingerprints corresponding to the fingerprints of the defendant must have been found in the immediate vicinity of the crime *under such circumstances as to establish beyond a reasonable doubt that the fingerprints were impressed at the time the crime was committed."* (Emphasis added.) *People v. Rhodes* (1981), 85 Ill. 2d 241, 249.

See *People v. Taylor* (1965), 32 Ill. 2d 165, 168.

In the instant case, the People failed to establish beyond a reasonable doubt that the fingerprint found on the stereo either belonged to defendant or that it was impressed at the time of the crime. The People claim they established beyond a reasonable doubt that the fingerprint belonged to defendant. However, the record shows that there was a reasonable doubt as to whether the fingerprint belonged to defendant. Mr. Theatrice Patterson, a fingerprint technician, testified that he manually compared the fingerprint found on the stereo with defendant's fingerprint. The print taken from the stereo was 60% of a full fingerprint impression. Mr. Patterson, however, testified that this did not affect the identification. He also testified that he found 19 points of comparison when he matched the latent print with a set of prints belonging to defendant. Mr. Patterson charted 10 of these

points during his testimony. He testified in detail as to these points of comparison and concluded that the fingerprint found on defendant's stereo was defendant's fingerprint. Yet, he conceded that *one unexplained dissimilarity would void a match*. During cross-examination, Mr. Patterson admitted that another expert would probably disagree with his findings. He mentioned several apparent dissimilarities between the fingerprints found on the stereo and defendant's fingerprints. These differences could not be visually detected by the trial court.

The People also maintain that they established beyond a reasonable doubt that the latent print found on the stereo was impressed at the time of the crime. Even if the fingerprint belonged to defendant, the fingerprint was not found "under such circumstances as to establish beyond a reasonable doubt that [it] [was] impressed [by defendant during] the [commission of the] crime." (*People v. Rhodes*, 85 Ill. 2d 241, 249.) During cross-examination, *Mr. Patterson acknowledged that he did not know the age of the fingerprint*. Since Mr. Patterson could not determine when the fingerprint was impressed upon the stereo, the fingerprint could have been impressed at any time.

The People's position that they established beyond a reasonable doubt that the print was impressed during the crime is also unsupported by the facts of the case. If the print had been impressed during the commission of the crime, it would indicate that the assailant was not wearing gloves. If the perpetrator did not wear gloves, more fingerprints should have been found. The victim's daughter testified that the stereo was moved from the dresser to the bed during the commission of the crime. Therefore, there should have been more than one fingerprint on the stereo. In addition, the evidence technician, Mr. Kelly, testified that he dusted several items for fingerprints on the day the crime occurred. Therefore, if defendant touched the stereo while committing the crime, other fingerprints belonging to defendant should have been found on other surfaces, such as bannisters and doorknobs, in the residence.

The case at bar is analogous to *People v. Ware* (1980), 82 Ill. App. 3d 297, and the standard enunciated in *Ware* should have been applied to the case at bar. In *Ware*, the victim was killed between 9:30 and 10:30 p.m. The only evidence leading to the defendant's guilt was his fingerprint left on a glass in the decedent's apartment after 3:30 p.m. (*Ware*, 82 Ill. App. 3d at 300, 304), and the testimony of a neighbor that the defendant was near the scene of the crime between 8:30 and 9:30 p.m. (*Ware*, 82 Ill. App. 3d at 302). This court concluded that the fingerprint evidence showed only that the defendant *could* have been

in the apartment at the time of the murder, but that the evidence did not exclude the possibility that the defendant was in the decedent's home earlier during the day and left before the crimes were committed. (*Ware*, 82 Ill. App. 3d at 305.) The court then reversed the defendant's murder conviction, holding that since the evidence did not exclude the possibility that the defendant's fingerprint may have been impressed at a time unrelated to the crime, the People did not establish the defendant's guilt beyond a reasonable doubt. *Ware*, 82 Ill. App. 3d at 305.

I find the evidence of defendant's guilt in the instant case insufficient to support his conviction. The evidence adduced does not show with a reasonable and moral certainty that defendant committed murder. (See *Ware* (1980), 82 Ill. App. 3d 297, 303.) Before his death, the victim stated that two black men forced their way into his home after attacking him. There was no description of the assailants and no competent evidence of a time frame during which the crime was committed. The People have failed to establish beyond a reasonable doubt that the fingerprint impressed upon the stereo belonged to defendant and that the fingerprint was impressed at the time of the crime. The aforementioned statement by the victim, coupled with a lone fingerprint, does not substantiate proof of defendant's guilt beyond a reasonable doubt. It is more likely that the single fingerprint was impressed at some other time. Defendant testified that he performed odd jobs in various houses in the neighborhood where the decedent resided, but, after eight years, he could not remember being in the decedent's home. Such an activity could reasonably explain defendant's fingerprint being on the stereo.

While I recognize that it is the function of the trial court to determine the inferences to be drawn from the evidence, the credibility of witnesses, and the weight to be given to their testimony (*Ware*, 82 Ill. App. 3d at 303), for the aforementioned reasons I find that the People have not met their burden of proof, and a reasonable doubt of defendant's guilt remains.

I would reverse the trial court.