THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
IOANNIS TSOMBANIDIS, Defendant-Appellant.

First District (4th Division)   No. 1—90—3602

Opinion filed September 17, 1992.

George P. Lynch, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Cory J. Pollack, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Ioannis Tsombanidis, was convicted of delivery of more than 30 grams of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) following a jury trial in the circuit court of Cook

County. Defendant was sentenced to the penitentiary for a term of seven years.

Defendant appeals, contending the trial court erred: (1) by denying his motion to dismiss the information, and (2) in making certain evidentiary rulings. Defendant also contends: (3) the prosecutor made improper and prejudicial remarks throughout the trial, and (4) the trial court erred in refusing to give a tendered jury instruction. We affirm the judgment of the trial court.

BACKGROUND

The record contains the following pertinent facts. On November 15, 1988, defendant was charged by information with one count of delivery of a controlled substance.

A

On May 2, 1989, defendant filed a motion that sought an order requiring the State to produce two informants who were at the scene of the crime. On September 4, 1990, the trial court held a hearing on the motion. The testimony presented therein was essentially as follows.

Anthony Greco, Jr., was a special agent in the United States Drug Enforcement Agency (DEA). Maurice Williams, also known as Victor Harris, was a suspect in a narcotics investigation. On January 23, 1987, Williams telephoned Agent Greco. Another person was with Williams during the telephone conversation who, unbeknownst to Williams, was a police informant. Williams also did not know that Greco was a drug enforcement agent. Williams notified Greco that the informant negotiated a drug transaction on Greco's behalf. After Williams spoke with Agent Greco, the informant spoke briefly with Greco to confirm the quantity and purchase price. The three agreed to meet later that day.

At approximately 1:30 p.m., Agent Greco met Williams and the informant outside of the Shish Kabob Restaurant near Diversey Parkway and Broadway in Chicago. Greco instructed the informant to wait outside, while Greco and Williams entered the restaurant. Williams introduced Agent Greco to defendant. With Williams present, Agent Greco agreed to buy two ounces of cocaine from defendant for $3,400.

Defendant told Agent Greco that they would leave the restaurant to go to a nearby house to obtain the narcotic. Greco went outside briefly, related the plan to the informant, and instructed him to tell surveillance agents that Greco would be leaving the vicinity. Greco returned to the restaurant and exited through the back door. The informant remained outside in front of the restaurant.

Agent Greco, Williams, defendant, and a fourth unknown person entered a red Ford automobile. Defendant drove them to the area of Diversey Parkway and Halsted Street. Defendant told Agent Greco that he would return with the cocaine. Defendant left the car, returned with the cocaine, and gave it to Agent Greco, who gave defendant $3,400.

They returned to the area of the Shish Kabob Restaurant. Agent Greco left the car and went to a nearby restaurant, where he recounted the details of the drug transaction to surveillance agents.

A few minutes later, Agent Greco left the surveillance agents and met Williams and the informant. They went to another nearby restaurant. Williams asked Greco for some of the cocaine that he bought from defendant. Greco refused and left the restaurant. Greco subsequently field-tested his purchase from defendant. The test indicated the presence of cocaine.

Steven Traub was a special agent in the DEA. On January 23, 1987, he was a member of the four-person surveillance team that was assigned to the anticipated narcotics purchase. At approximately 1:30 p.m. on that day, Agent Traub observed Agent Greco meeting with Williams and the informant in front of the Shish Kabob Restaurant. Agent Traub could not park his automobile due to traffic in the area. Rather, he was forced to cruise in the area. Traub's observations of the Shish Kabob Restaurant essentially corroborated Agent Greco's testimony.

As a result of defendant's prosecution, the State's Attorney's office asked Agent Traub to locate the informant. Traub and his partner contacted several persons who knew the informant and questioned managers at several residences where he had lived. However, the agents were unable to locate him. Agent Traub had information that placed the informant in Puerto Rico; however, Traub did not contact law enforcement officials or anyone else there. Traub searched for information pertaining to the informant through his agency's computerized criminal files; however, Traub did not seek information from several Federal, State, and local government agencies.

The trial court found that the informant's testimony would be relevant and material. The court ordered that the informant be produced or identified. The trial court also found that the State had not yet exercised due diligence in attempting to locate the informant. (See *People v. Holmes* (1990), 135 Ill. 2d 198, 510 N.E.2d 1139.) However, the court refused to dismiss the indictment. The State provided defendant with the informant's name, last known address, and criminal history.

B

On September 10, 1990, the trial court held a pretrial hearing to ascertain the progress made on locating the informant. Also on that day, defendant filed a motion that sought an order requiring the State to provide defendant with the drug evidence against him, or a sample thereof, for testing. In the alternative, defendant sought: (1) an order *in limine* precluding any testimony relating to the identification or weight of the substance, or (2) the dismissal of the information. At the hearing, the State admitted that the DEA destroyed the drug evidence. The prosecutor represented to the court that the destruction of the drug evidence was inadvertent and not done in bad faith.

The next day, a hearing was held on defendant's motion. The State was given an opportunity to show that the drug evidence was inadvertently destroyed and not in bad faith. Without repeating the evidence presented at the prior hearing, the testimony was essentially as follows.

In January 1987, Agent Greco opened an investigative file on Maurice Williams. On January 14, 1987, Greco bought cocaine from Williams. Greco placed the drug evidence and resulting reports of the transaction in the Williams file.

On January 23, Agent Greco bought two ounces of cocaine from defendant for $3,400. According to then-existing DEA procedures, when suspect A, who was the cause of an investigation, leads an agent to suspect B, the file initially opened for suspect A is also used for information developed from suspect B. Agent Greco met defendant through Williams. Thus, Greco placed the drug evidence against defendant into the Williams file. Although both drug purchases were in the same file, each purchase was accompanied by a separate inventory slip and investigative reports.

In May 1988, an assistant State's Attorney notified DEA Agent Charles Banks that Maurice Williams, also known as Victor Harris, had been prosecuted. After consulting the DEA manual, Agent Banks telephoned the assistant State's Attorney. The prosecutor informed Banks that Williams had pled guilty and that the agency could destroy the drug evidence relating to his case.

On July 8, 1988, Agent Banks completed the requisite form (DEA Form 48) for the destruction of the drug evidence in the Williams file. Banks did not read the Williams file; he did not know that the file contained drug evidence that related to defendant. On October 5, 1988, the drug evidence against Williams, as well as that against defendant, was destroyed.

At the close of the hearing, the trial court denied the motion. The court described the actions of the DEA as "negligent" and "very sloppy." However, the court found that the drug evidence against defendant was destroyed inadvertently; the evidence was not destroyed "for any ulterior reason," or in bad faith. The court ruled that the destruction of the drug evidence goes to the weight of the evidence and, therefore, is a question of fact for the fact finder. The court also ruled that the motion was not timely. The court granted defendant a 60-day continuance so that he could locate the informant.

On November 13, 1990, immediately prior to trial, defendant renewed his motion to dismiss the information based on the State's failure to produce the informant or the destruction of the drug evidence in his case. The trial court denied the motion.

C

At trial, the State's evidence was essentially as follows. Agents Greco and Traub repeated their testimony at the two pretrial hearings. Agent Greco further testified, in greater detail, what he did with the cocaine that he bought from defendant. In the regular course of office practice, Agent Greco completed DEA Form 7, which was admitted into evidence. The completed form gave a description of the drug evidence and the results of Agent Greco's field-test. The form showed that the substance that defendant sold to Greco was 79% pure cocaine. Greco opined that the substance would have a street value of between $10,000 and $20,000. Greco sealed and labelled the original plastic bag containing the cocaine. He then placed the plastic bag inside a larger envelope, which he likewise sealed and labeled. Greco personally delivered the substance and the form to the agency's north central laboratory for analysis and storage.

George Yamnitzky was a supervisory chemist at the DEA north central laboratory. On January 28, 1987, he personally gave the drug evidence to DEA chemist Deborah Edick for analysis. Edick observed that the seals on the evidence envelope were intact. The analysis determined as follows: the weight of the substance, in addition to its original plastic bag and the DEA evidence envelope, was 79.8 grams; the weight of the substance in its original plastic bag was 57.43 grams; and the weight of the substance itself was 55.62 grams. The substance was 79% pure cocaine. After her analysis, Edick personally returned the drug evidence to the laboratory vault.

Defendant was not arrested on January 23, 1987, because he was part of a continuing investigation. In August 1987, Agent Greco obtained an arrest warrant for defendant and placed it in the Maurice

Williams file. In September 1987, Special Agent Allen Doescher was assigned to the Williams file. In reviewing the file, Agent Doescher discovered the arrest warrant for defendant. On August 17, 1988, Agent Doescher arrested defendant.

Agent Charles Banks repeated his prior testimony, in which he explained his inadvertent authorization of the destruction of the drug evidence in defendant's case. On October 5, 1988, Yamnitzky witnessed the incineration of the drug evidence. He recorded the event, in the regular course of office practice, in DEA Form 48, which was admitted into evidence.

Defendant was the sole witness for the defense. His testimony was essentially as follows. Defendant ate regularly at the Shish Kabob Restaurant. He knew the restaurant's owner and several restaurant employees. On January 23, 1987, the restaurant's cook asked defendant to give the cook a ride in defendant's car. Defendant complied. The cook was accompanied by two men whom defendant did not know. Defendant drove his red Ford Escort in the neighborhood of the restaurant, following the directions of the others.

After driving for a brief time, the men directed defendant to park the car. Two of the men exited the car and walked away. They returned to the car approximately five minutes later. Defendant drove back to the restaurant. Defendant did not know that a drug transaction had occurred and was not involved in the crime.

At the close of the trial, the jury convicted defendant as charged. At the sentencing hearing, the trial judge denied defendant's posttrial motion. At the close of the hearing, the trial judge sentenced defendant to a prison term of seven years. Defendant appeals.

OPINION

I

Defendant claims that the trial court erred by denying his motion to dismiss the information, based on: (A) the State's failure to produce the informant, or (B) the destruction of the drug evidence in his case.

A

■ Defendant contends the trial court should have dismissed the information because the State failed to produce the informant who introduced Agent Greco to defendant. For an indictment or information to be dismissed due to the unavailability of a government informant, "a defendant must first establish that the informant's testimony

would be relevant and material." (*People v. Holmes* (1990), 135 Ill. 2d 198, 201, 552 N.E.2d 763, 766, citing *People v. Stumpe* (1979), 80 Ill. App. 3d 158, 163, 399 N.E.2d 292, 297.) Second, if that is established, the State must identify and produce the informant for trial, or show that it has made a reasonable good-faith effort to locate the witness. (*Holmes*, 135 Ill. 2d at 212-13, 552 N.E.2d at 771.) Third, if the State meets its burden, the indictment or information can be dismissed only if the defendant can prove "by clear and convincing evidence that the unavailable informant's testimony would raise a reasonable doubt as to the State's case." *Holmes*, 135 Ill. 2d at 214, 552 N.E.2d at 772.

■ After carefully reviewing the record, we conclude that defendant failed to satisfy the third prong of the *Stumpe* test, as explained in *Holmes*. The State's case was simply that defendant sold cocaine to Agent Greco in defendant's automobile. Defendant testified that two of the three men to whom he gave a ride left the car and made a sale. However, the informant did not accompany them and, thus, did not witness the transaction. Further, the record does not contain any evidence that defendant even told the informant what occurred during the ride. We find that defendant has failed to make a clear and convincing showing that the informant's testimony would raise a reasonable doubt as to the State's case. We hold that the trial court properly denied defendant's motion to dismiss the information on this ground.

### B

Defendant contends the trial court should have dismissed the information also because the State destroyed the drug evidence in his case. Defendant bases this contention on two decisions of this court: *People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573, and *People v. Dodsworth* (1978), 60 Ill. App. 3d 207, 376 N.E.2d 449.

In *Taylor*, the court held that the State "has a duty to preserve some part of the substance so that an independent chemical analysis may be made by the putative law violator in the event criminal prosecution is later instituted." (*Taylor*, 54 Ill. App. 3d at 457, 369 N.E.2d at 575.) The *Taylor* court went on to hold as follows:

"But whenever an accused seeks by timely motion a sample of the allegedly controlled substance, so that it can be subjected to independent testing *** a heavy burden devolves upon the State either to produce a testable sample or to prove by clear and convincing evidence that the destruction of all of the substance in its possession was necessary. If it can do neither, then it should not, as a matter of fundamental fairness, be permitted

to introduce into evidence the results of its tests." 54 Ill. App. 3d at 457-58, 369 N.E.2d at 576.

The court in *Dodsworth*, relying on *Taylor*, held as follows:

"In any event, where as here, the State unnecessarily and presumably intentionally destroys the alleged contraband without the defendant having opportunity for his own testing or the protection of court imposed safeguards to protect his rights, we agree with *Taylor* that the trial court commits reversible error in admitting evidence of the results of the State's test." *Dodsworth*, 60 Ill. App. 3d at 211, 376 N.E.2d at 452.

See *People v. Ebener* (1987), 161 Ill. App. 3d 232, 514 N.E.2d 205.

The court in *Taylor* reasoned that "inherent in the most narrow view of due process are the right to know of evidence and the opportunity to rebut it." (*Taylor*, 54 Ill. App. 3d at 456, 369 N.E.2d at 575.) The court specifically noted that the State's duty of preservation attached regardless of the good or bad faith of the State. (54 Ill. App. 3d at 457, 369 N.E.2d at 575-76.) However, subsequent to our decision in *Taylor*, the United States Supreme Court has concluded as follows:

"But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. *** We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood* (1988), 488 U.S. 51, 57-58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337.

This court has applied the standard of *Youngblood* in several cases. (See, *e.g., People v. Young* (1991), 220 Ill. App. 3d 488, 581 N.E.2d 241; *People v. Stallings* (1991), 211 Ill. App. 3d 1032, 570 N.E.2d 820.) After comparing the reasoning and result in *Youngblood* with that in *Taylor* and its progeny, we hold that *Youngblood* has overruled *Taylor* and *Dodsworth* on this issue.

■ Applying the *Youngblood* standard to the present case, we conclude that defendant has failed to show a violation of his constitutional rights. The record amply supports the trial court's findings that the actions of the DEA were "negligent" and "very sloppy." However, the record does not contain any evidence of bad faith on the part of DEA personnel. Rather, the record shows that the evidence was destroyed as a result of an inadvertent decision injected into

standard office procedure. We hold that the trial court properly denied defendant's motion to dismiss the information on this ground.

## II

Defendant claims that the trial court erred in admitting into evidence: (A) testimony relating to the drug evidence in general, and (B) two DEA reports in particular. We note at the outset that the admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a showing that the trial court exceeded its discretion to the prejudice of the defendant. *People v. Hermann* (1988), 180 Ill. App. 3d 939, 944, 536 N.E.2d 706, 709; *People v. Shiflet* (1984), 125 Ill. App. 3d 161, 178, 465 N.E.2d 942, 953-54.

## A

Defendant contends the trial court should have excluded testimony relating to the drug evidence because the State failed to establish a sufficient chain of custody. A chain of custody foundation is required when proffered evidence is not readily identifiable or is susceptible to alteration by tampering or contamination. The chain of custody must be of sufficient completeness to render it improbable that the item has been tampered with, exchanged, or contaminated. To establish a sufficient chain of custody, the State need not exclude every possibility of tampering. Rather, the State need only show that it took reasonably protective measures after the substance was seized, and that it was reasonably probable that the evidence was not changed in any important respect or substituted. Unless the defendant provides actual evidence of tampering or substitution, the State need only establish the stated probability and any deficiencies go to the weight and not the admissibility of the evidence. *Hermann*, 180 Ill. App. 3d at 944, 536 N.E.2d at 709; *People v. Holman* (1987), 157 Ill. App. 3d 764, 775, 510 N.E.2d 1139, 1146; *Shiflet*, 125 Ill. App. 3d at 178, 465 N.E.2d at 954.

■ Applying these principles to the case at bar, we conclude that the State established a sufficient chain of custody of the drug evidence. The record shows that Agent Greco personally field-tested the drug evidence and completed DEA Form 7. Greco sealed and labelled the original plastic bag that contained the cocaine. He then placed this bag inside of a larger envelope, which he likewise sealed and labelled. These constituted reasonably protective measures. (See *People v. Irpino* (1984), 122 Ill. App. 3d 767, 775, 461 N.E.2d 999, 1005.) Further, Greco personally delivered the drug evidence to the DEA

north central laboratory. DEA supervisory chemist Yamnitzky personally gave the evidence to DEA chemist Edick, who observed that the envelope was sealed.

Defendant argues that gaps exist in the chain of custody. Agent Greco testified that he did not personally maintain custody of the drug evidence from when he sealed and labelled the evidence to when he delivered the evidence to the DEA laboratory. Also, DEA chemist Edick testified that she was not sure exactly when she analyzed the evidence, but she must have placed the evidence in a locked box until she actually performed the tests. However, Edick testified that the box had a combination lock, of which only she knew the combination, and also that the evidence was sealed when she received it. "Where one link in the chain is missing but testimony describes the condition of the evidence when delivered which matches the description of the evidence when examined, the evidence suffices to establish a continuous chain of custody." *Irpino*, 122 Ill. App. 3d at 775, 461 N.E.2d at 1005.

Defendant additionally argues that the testimony relating to the drug evidence contains variations as to the weight of the substance. However, as we stated earlier, the drug evidence was weighed: in its original plastic bag with the DEA evidence envelope, in its original plastic bag, and by itself.

Since the State established a sufficient chain of custody of the drug evidence, the results of the chemist's analysis were admissible. (*People v. Anthony* (1963), 28 Ill. 2d 65, 69, 190 N.E.2d 837, 839; *People v. Norman* (1962), 24 Ill. 2d 403, 407, 182 N.E.2d 188, 190.) We cannot say that the trial court exceeded its discretion in admitting testimony relating to the drug evidence.

## B

Defendant next contends the trial court should have excluded specifically DEA Form 7, which contained the chemical analysis of the drug evidence, and DEA Form 48, which authorized the destruction of the drug evidence. Defendant argues that the forms were police reports and, therefore, hearsay.

Hearsay is testimony in court or written evidence of an out-of-court statement, offered to establish the truth of the matter asserted and, thus, resting for its value upon the credibility of the out-of-court asserter. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741.) The fundamental purpose of the hearsay rule is to test the real value of testimony by exposing the source of the assertion to cross-examination. Hearsay is excluded because of the absence of this

essential test for ascertaining trustworthiness. *Carpenter*, 28 Ill. 2d at 121, 190 N.E.2d at 741; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.1, at 566-67 (5th ed. 1990) (hereinafter Graham).

However, there are exceptions to the rule against hearsay, in which hearsay testimony is admissible. These exceptions possess "requirements considered to be sufficient guarantees of trustworthiness to justify introduction." (Graham, §803.1, at 621.) One such hearsay exception allows the admission of the records of the regularly conducted activities of any business, profession, or occupation. Ill. Rev. Stat. 1985, ch. 38, par. 115—5(a).

The business records exception to the rule against hearsay is premised on the recognition that records of an act, occurrence, or event that are routinely made at the time of the occurrence, or within a reasonable time thereafter, are normally sufficiently reliable to be admissible in evidence despite their hearsay character. The credibility of a business record depends on the regular, prompt, and systematic nature of the entry and the fact that it is relied on in the operation of the business. (*People ex rel. Schacht v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 344, 448 N.E.2d 950, 957.) Since the purpose of business records "is to aid in the proper transaction of business and they are useless for that purpose unless accurate, motive for following a routine of accuracy is great and the motive for falsifying nonexistent." (*People v. Reed* (1982), 108 Ill. App. 3d 984, 989, 439 N.E.2d 1277, 1281.) The foundation required for admission under the business records exception is that (1) the writing or record was made as a memorandum or record of the act, transaction, occurrence, or event; (2) it was made in the regular course of business; and (3) it was the regular course of such business to make such a record at the time of the transaction or within a reasonable time thereafter. Ill. Rev. Stat. 1985, ch. 38, par. 115—5(a).

Since the rationale of the business records exception is the probability of trustworthiness, records prepared for litigation, or during an investigation of an alleged offense, are not normally admissible, even if it is part of the regular course of business to make such records. This includes police reports. Ill. Rev. Stat. 1985, ch. 38, par. 115—5(c)(2); *Schacht*, 114 Ill. App. 3d at 344, 448 N.E.2d at 957; Graham §803.13, at 665.

■ Applying these principles to the present case, we conclude that DEA Forms 7 and 48 were admissible under the business records exception to the rule against hearsay. DEA Form 7 contained the report of the chemical analysis performed by DEA chemist Edick. We

agree with the District of Columbia Court of Appeals that DEA chemical analysis reports are sufficiently trustworthy and have sufficient indicia of reliability to fall within the exception.

In *Howard v. United States* (D.C. App. 1984), 473 A.2d 835, the court reasoned that DEA chemists determine the identity of a controlled substance by a well-recognized chemical procedure. Thus, their reports contain objective facts rather than expressions of opinion. The court also reasoned that DEA chemists conduct their analyses routinely and generally do not have an interest in the outcome of trials. The court found that "as employees and scientists, they are under a duty to make accurate reports." The court found: "It is difficult to perceive any motive or opportunity for the chemists to falsify." *Howard,* 473 A.2d at 839.

We hold that DEA Form 7 was admissible under the business records exception to the rule against hearsay. In so holding, "we are in agreement with most state and federal courts that have addressed this or similar issues." *Howard,* 473 F.2d at 839-40 (and cases cited therein); see *United States v. Baker* (8th Cir. 1988), 855 F.2d 1353, 1359-60.

DEA Form 48 authorized the destruction of the drug evidence. Agent Banks testified that he completed the form pursuant to regular office practice. The nature of the form was clearly administrative; it was not prepared "during an investigation of an alleged offense or during an investigation relating to pending or anticipated litigation." (Ill. Rev. Stat. 1985, ch. 38, par. 115—5(c)(2).) Indeed, Agent Banks completed the form because the litigation had concluded as to Maurice Williams by way of his conviction. We hold that DEA Form 48 was admissible under the business records exception to the rule against hearsay.

We note defendant's claim that he was prejudiced by the admission of DEA Form 48. Defendant contends that the form constitutes evidence of unrelated criminal conduct, which the prosecutor successfully placed before the jury. Defendant notes that the form records the destruction of two samples of cocaine, the sample that relates to his case and the sample that relates to the case of Maurice Williams. Defendant posits that the prosecutor essentially accused him of delivering the additional sample.

■ This argument completely lacks merit. We have previously recounted the ample testimony explaining the circumstances surrounding DEA Form 48. We do not need to repeat them here. Defendant has failed to show how he was prejudiced by the admission of DEA

Form 48. We cannot say that the trial court exceeded its discretion in admitting into evidence DEA Forms 7 and 48.

## III

Defendant next claims that he did not receive a fair trial because the prosecutor made several improper and prejudicial remarks throughout the trial.

### A

Defendant assigns error to the prosecutor asking defendant whether he played cards or liked to play cards. Defendant contends the prosecutor attempted to place before the jury the idea that defendant was a "gambler." Defendant equates this characterization with unrelated criminal conduct. Defendant posits that the prosecutor attempted to elicit this unrelated criminal conduct to show defendant's propensity to commit crime.

However, defendant objected to this line of questioning and the trial court sustained the objection and subsequently instructed the jury to disregard the remarks. Thus, even assuming the prosecutor's conduct constituted error, such error was cured. *People v. Wilson* (1972), 51 Ill. 2d 302, 308-09, 281 N.E.2d 626, 629; *People v. Rowe* (1983), 115 Ill. App. 3d 322, 327, 450 N.E.2d 804, 808, *aff'd* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.

### B

Defendant contends he was denied a fair trial also because the prosecutor made improper and prejudicial remarks during rebuttal closing argument. Continuing the "gambler" characterization, the prosecutor argued that defendant bet that the jury "would listen and buy his version of the truth. It's a gamble. It's a role of the dice. He is trying to role the dice in this courtroom."

However, defendant failed to object to these allegedly improper remarks at trial. Thus, the issue is waived. (*People v. Pastorino* (1982), 91 Ill. 2d 178, 193, 435 N.E.2d 1144, 1151.) After reviewing the record, we further conclude that this issue does not warrant our consideration under the plain error doctrine of Supreme Court Rule 615(a). 134 Ill. 2d R. 615(a); see *People v. Lucas* (1981), 88 Ill. 2d 245, 250-51, 430 N.E.2d 1093-94.

### IV

Defendant lastly claims that the trial court erred in refusing to submit to the jury two tendered instructions. A defendant, like the

State, is entitled to the submission of appropriate jury instructions on the law that applies to his theory of defense if there was evidence introduced at trial in support of that theory. However, it is for the trial court to determine, after consideration of the facts and the governing law, whether the jury should be instructed on a particular subject. The trial court must further determine whether the Illinois Pattern Jury Instructions, Criminal (2d ed. 1981) (IPI Criminal 2d) contain an instruction which accurately states the law on that subject. If an appropriate IPI instruction exists, it must be used. 134 Ill. 2d R. 451(a); *People v. Thomas* (1988), 175 Ill. App. 3d 521, 528, 529 N.E.2d 1071, 1075.

However, the decision whether to give a non-IPI instruction rests with the sound discretion of the trial court. An abuse of discretion in the refusal of a non-IPI instruction occurs only where there is no IPI instruction that applies to the subject on which the jury should have been instructed. Conversely, a trial court does not exceed its discretion by refusing to give a non-IPI instruction if there is an applicable IPI instruction or the essence of the refused instruction is covered by other given instructions. *Thomas,* 175 Ill. App. 3d at 528, 529 N.E.2d at 1075.

A

The trial court refused to submit to the jury defense instruction number 2, which stated: "If two conclusions can reasonably be drawn from the evidence, one of innocence, and one of guilt the jury should adopt the one of innocence." It is settled that " 'the trial court should instruct the jury to adopt the hypothesis as to the factual occurrence which favors the innocence of the defendant where opposing theories as to guilt or innocence *can arise out of the same facts.*' " (Emphasis added.) *People v. House* (1990), 197 Ill. App. 3d 1017, 1023, 557 N.E.2d 270, 274, quoting *People v. DeHoyos* (1975), 31 Ill. App. 3d 12, 20, 332 N.E.2d 643, 649.

■ In the present case, the opposing theories as to guilt or innocence did not arise out of the same facts. Rather, the testimony of Agent Greco and defendant was contradictory as to what occurred during the drug transaction. Agent Greco testified that defendant sold narcotics to Greco; defendant testified that he did not participate in any drug transaction. Our supreme court explained as follows:

"Such an instruction is proper only when the opposing theories arise out of the same facts. Where the defense is that the defendant did not participate in the alleged crime, it is proper

to refuse such an instruction." (*People v. Rhodes* (1969), 41 Ill. 2d 494, 499, 244 N.E.2d 145, 148.) We cannot say that the trial court exceeded its discretion in refusing this instruction. See *House*, 197 Ill. App. 3d at 1023-24, 557 N.E.2d at 274 (and cases cited therein).

## B

The trial court refused to submit to the jury defense instruction number 3, which stated: "Presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish the defendant's guilt." Of course, this statement accurately reflects the law. *Thomas*, 175 Ill. App. 3d at 528, 529 N.E.2d at 1075-76; *People v. Stamps* (1982), 108 Ill. App. 3d 280, 297, 438 N.E.2d 1282, 1296.

■■ Defendant was entitled to the submission of appropriate jury instructions on his theory of defense. However, defense instruction number 3 was not such a theory. "Rather than constituting a theory, the proposed instruction is little more than an assertion of innocence." *People v. Craig* (1979), 79 Ill. App. 3d 584, 589, 399 N.E.2d 168, 172.

The trial judge submitted to the jury instructions on the presumption of innocence, burden of proof, and quantum of proof (IPI Criminal 2d No. 2.03), together with an instruction on the necessary elements of the offense (IPI Criminal 2d No. 17.11). These instructions informed the jury that if the State proved beyond a reasonable doubt that defendant knowingly delivered the cocaine, then he was guilty of the offense. Conversely, the jury was also informed that if defendant did not knowingly deliver the narcotic, he was not guilty of the offense. Thus, the jury was fully aware that defendant's mere presence was not sufficient to convict. See *Stamps*, 108 Ill. App. 3d at 298, 438 N.E.2d at 1297.

We conclude that the essence of the "mere presence" instruction was already encompassed by the IPI instructions. Thus, the denied non-IPI instruction was merely redundant. (See *Thomas*, 175 Ill. App. 3d at 528-29, 529 N.E.2d at 1076; *Craig*, 79 Ill. App. 3d at 589, 399 N.E.2d at 172.) We cannot say that the trial court exceeded its discretion in refusing this instruction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.