THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD REED, Defendant-Appellant.

First District (5th Division)  No. 1—91—3938

Opinion filed March 12, 1993.—Rehearing denied March 26, 1993.

Michael J. Pelletier and Todd Avery Shanker, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Elizabeth A. Scholz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

On December 16, 1990, defendant Gerald Reed (Reed) was arrested and charged under indictment No. 91—CR—2439 with posses-

sion of a controlled substance (.51 grams of heroin) with intent to deliver. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(d).) While Reed was released on bond pending trial on the case, he was arrested on April 30, 1991, and charged under indictment No. 91—CR—13210 with a separate instance of possession of a controlled substance with intent to deliver. A jury trial was held on the first indictment on September 25, 1991, and Reed was found guilty. Prior to sentencing on this conviction, Reed pled guilty to the charge in the second indictment and was then sentenced on both convictions to six years' imprisonment, sentences to run consecutively.

Reed now appeals from the judgment and sentence entered on the jury conviction only. In his appeal Reed raises these three issues: (1) whether he was denied a fair trial because the trial court admitted into evidence a $20 bill despite certain defects in the chain of custody; (2) whether the prosecutor's closing argument evidenced misconduct because he referred to Reed as a drug dealer and misstated the law; and (3) whether Reed was denied effective assistance of trial counsel. For reasons that follow, we affirm Reed's conviction and sentence.

Two Chicago police officers, Ronald Baez and Scott Chambers, testified that on the afternoon of December 16, 1990, they were assigned to routine patrol duty. Around 4:30 p.m. they began surveillance of the southeast corner of Bowen and Vincennes, which is located within their beat and known to the officers to be a high crime area. While sitting in their marked patrol car about a block and a half away, they surveyed the corner using binoculars (or field glasses). Doing so, they observed four or five men standing on the corner in front of a liquor store. One man, who was later identified as Reed, was standing near two telephones located on the same corner. He was wearing a suit, had a trench coat draped over his shoulders and a fedora on his head.

Through the binoculars the officers witnessed what they believed to be drug transactions taking place between Reed and other persons. First Officer Chambers and then Officer Baez used the binoculars. Each officer, in turn, observed someone approach Reed and pass what appeared to be currency to Reed. Reed then reached into his right pants pocket and passed something back to the person. After each officer witnessed an exchange, they decided to make a street stop.

As Officer Chambers drove the marked patrol car to the corner, he and Baez could see that a third person had approached Reed. From their position now, the officers could see that this person was passing money to Reed. Baez jumped out of the patrol car as someone yelled "Police." Immediately the person, having been made aware of

the police officers' presence, turned and walked hurriedly away. Reed, who had been in the process of withdrawing an item from his right pants pocket to pass to the person, crumpled the bill that he received and placed it into his left pants pocket and replaced the item he had in his right pocket. Reed, too, began to walk off and, as he did so, dropped a plastic bag.

Baez stopped Reed and placed him under arrest while Chambers retrieved the plastic bag, which now could be seen to contain four smaller knotted plastic bags, each containing a tan-colored powder. Reed was patted down and placed into the patrol car.

As the officers arrested Reed, two or three verbally belligerent men approached the officers and told the officers not to take Reed away. These men, who appeared to have been drinking, were told to disperse. When they refused, they were arrested and taken with Reed to second district police station.

At the police station Reed was searched. Baez testified that a crumpled $20 bill was found in Reed's left pants pocket and another $1,300 was found in various locations on Reed's person. The $1,300, which consisted of one $50 bill, 23 $20 bills, 48 $10 bills, 48 $5 bills and 70 $1 bills, was grouped into $100 bundles and distributed in three locations on Reed's person, including Reed's shoe.

Officer Baez further testified that he inventoried the $1,300 that had been recovered from Reed, filling out an inventory slip for it personally. He also testified that he had inventoried the $20 bill, which was given its own inventory number and kept separate from the other currency. The plastic bag containing the four individual bags of tan powder was also inventoried at this time.

Craig Washington, a chemist for the Chicago police department, testified that he tested the tan powder that was recovered at the time of defendant's arrest. The powder contained in the four knotted baggies was determined to be a substance containing heroin with a total weight of .51 grams.

At the close of the State's case, the State moved to have exhibits 1 through 3 admitted into evidence. The defense objected to the admission of exhibit No. 2, which was the $20 bill. The objection was overruled, and the defense called its first witness, Keyon Moore.

Moore indicated that he had known Reed for four years and then testified that around 5:30 p.m. on December 16, 1990, he was walking to the store located on the corner of Bowen and Vincennes. As he was approaching the store he saw two police officers in a marked car pull up to the corner. The officers got out of the car and ordered everyone to place their hands on the police car.

Moore testified that he and Reed, who had been using one of two telephones on the corner, were among the persons who complied with the officers' demand. The officers then searched everyone twice and, in the second search, found some money in Reed's shirt pocket. Based upon this discovery the officers handcuffed Reed, placed him in the patrol car, and told the rest of the people they could leave.

According to Moore, after arresting Reed the officers did not drive away. Instead, they began to search the area, including a vacant lot across the street. In this vacant lot one of the officers found a plastic bag among the weeds. The officers then told the five or six persons who had remained in the area to again place their hands on the patrol car. Moore testified that these persons were searched and, after this third search, four more persons were handcuffed and taken into custody. Moore was not among those persons who were arrested and he gave no explanation for the arrest of these other persons.

The next defense witness was Squire Armstrong. He testified that on December 16, 1990, he lived at 517 East Bowen. When he looked out his window in the evening on that date, he saw two police officers searching four or five people who were standing with their hands on a police car. Armstrong, who also knew Reed, claimed that Reed was on the telephone when the police interrupted him, searched him and then handcuffed him.

Armstrong further testified that he left his apartment and went to the liquor store. As he walked into the liquor store he noticed that the police officers were searching the vacant lot across the street. As he was leaving the liquor store, he saw that the police grabbed his nephew, who had been standing on the corner. Armstrong went to see what the trouble was and the police arrested him and his nephew, as well as a couple of other persons, for mob action.

After this evidence was presented, the defense rested. The jury was instructed and, after deliberation, Reed was found guilty of possession of a controlled substance with the intent to deliver.

In Reed's first issue on appeal he contends that he was denied due process of law because the trial court admitted into evidence the $20 bill recovered from Reed although a proper chain of custody was not proven. He asserts that because an objection was made at trial to the admission of this evidence and because the admission of this evidence was "plain error," the issue is preserved for review despite the fact that the matter was not raised in a post-trial motion.

The State, on the other hand, contends that Reed waived this issue by failing to bring it to the court's attention in a post-trial motion. Alternatively, the State argues that the chain of custody was

proper, but that even if the chain of custody was improper, any error was harmless beyond a reasonable doubt.

Before we resolve this issue, we first return to the testimony concerning the $20 bill. Officer Baez testified concerning the process he followed when inventorying the money recovered from Reed. Baez stated that he first counted the money in front of defendant, then had the desk sergeant recount the money. The $1,300 was then placed in a money envelope and inventoried in an inventory book, with a receipt being produced and signed by him. Baez identified the inventory slip in court.

In addition, Baez testified that he placed the $20 bill, which he inventoried separately, into a plastic bag, placed the $1,300 into another plastic bag and then placed both plastic bags into the same money bag. Baez also testified that money bags were generally placed in a bank for security purposes. However, at trial Baez was shown an envelope which contained a $20 bill. Although he identified the envelope, he indicated that the signature on the envelope was that of the "IRPS officer"[1] and that he (Baez) had not been present when the money was placed into the envelope at the "IRPS."

■ We agree that the testimony adduced at trial failed to establish a continuous chain of custody for this $20 bill. However, we note that no objection was made to the sufficiency of the chain of custody during Baez's testimony. Consequently, Baez was not asked to clarify the chain of custody as to this bill. The only objection came at the close of the State's case when the State moved for the admission of the physical evidence. Only then did defense counsel object to the admission of exhibit No. 2, which was the $20 bill, on the ground that the State had failed to prove that the $20 bill was the same bill taken from Reed.

It would seem that this rather untimely objection, coupled with the failure to raise the issue in a post-trial motion, should constitute waiver. (People v. Turner (1989), 128 Ill. 2d 540, 539 N.E.2d 1196.) However, even if waiver did not apply, we would not find that Reed was entitled to a new trial. We believe that a sufficient foundation was established to permit the admission of the $20 bill into evidence. (People v. Pittman (1963), 28 Ill. 2d 100, 103, 190 N.E.2d 802.) Furthermore, even if the foundation was not sufficient, the admission of the $20 bill into evidence was, at worst, harmless error.

---

[1]Baez's testimony does not reveal who or what an "IRPS" officer is. However, it is this court's belief that reference is being made to the "inventory (or evidence) and recovered property section" of the police department.

To establish a sufficient chain of custody the State need only establish that it took reasonable protective measures after the evidence was seized and that, in all probability, the evidence was not changed, tampered with or substituted. (*People v. Tsombanidis* (1992), 235 Ill. App. 3d 823, 833, 601 N.E.2d 1124.) Unless the defendant shows actual evidence of tampering or substitution, any deficiencies in the chain of custody go to weight, not admissibility, of the evidence. (*Tsombanidis*, 235 Ill. App. 3d at 833.) Based upon these standards, we must find that a sufficient chain of custody was established to support the trial court's decision to admit the evidence at trial. The arresting officer's testimony established that, after he recovered a $20 bill from Reed, he inventoried it and placed it into a plastic bag and then into a money bag along with the $1,300. The money was then deposited in a bank for security purposes. It is unclear from the testimony at trial whether the $20 bill was still in the plastic bag or whether the inventory number given to the bill by Officer Baez was still attached to the bill in some manner. However, as stated earlier, since defendant does not contend that the State tampered with the evidence in any way, these deficiencies go to the weight to be given the evidence, not to its admissibility.

Furthermore, even if the $20 bill had been improperly admitted, the error was harmless beyond a reasonable doubt. Reed was charged with and convicted of possession of a controlled substance with the intent to deliver. It was, therefore, incumbent upon the State to prove that Reed had in his possession a controlled substance. Thus, the State had to show that the substance recovered from Reed was, in fact, the substance that was later tested and proven to be a controlled substance.

To establish Reed's culpability for the crime charged, it was not necessary to show that Reed had any money on his person. Nor was it necessary to show that Reed possessed a particular $20 bill. The $20 bill recovered from Reed was only significant because it tended to corroborate the officers' testimony concerning the exchanges between Reed and other persons which the officers testified that they witnessed. The officers' testimony is what established the "intent to deliver" portion of the offense with which Reed was charged, not the $20 bill. There was also little, if any, motivation for the police to alter or tamper with this physical evidence. Furthermore, the $1,300 found on Reed also tended to support the notion that Reed had been selling the drugs he had in his possession. For these reasons, the admission of the $20 bill, even if error, was harmless since the other competent

evidence admitted at trial proved Reed guilty of the charged offense beyond a reasonable doubt.

Next Reed contends that he was denied a fair trial by certain allegedly improper comments made by the prosecutor during closing argument. First, Reed argues that he was unfairly prejudiced when the prosecutor described him as a "businessman" whose "business is selling drugs." Reed contends that the case was a closely balanced one and that the State unfairly tipped the balance in its favor when it inflamed and influenced the jury with this insinuation, unsupported by the evidence, that Reed was a career drug dealer. Secondly, Reed argues that the prosecutor misstated the law and improperly shifted the burden of proof to him by making comments which implied that in order for the jury to acquit him, the jury would have to believe that the State's witnesses were lying and involved in a conspiracy.

Initially, the State responds by asserting that Reed has waived review of these alleged errors by failing to make contemporaneous objections to the specified comments during the State's argument and by failing to raise these matters in his post-trial motion. Defendant does not address the State's claim of waiver, but repeatedly characterizes the case as a closely balanced "credibility contest." Thus, Reed would apparently have this court review the matter as plain error. (See *People v. Crossno* (1981), 93 Ill. App. 3d 808, 417 N.E.2d 827 (in closely balanced criminal cases errors not properly preserved may be considered).) In this case, however, we do not find the evidence of defendant's guilt to be closely balanced.

■ Our review of the evidence of Reed's guilt shows it to be substantial. Two police officers testified that they each witnessed what they believed to be a drug exchange between Reed and an unidentified person on the street before deciding to make a street stop. While in the process of driving to Reed's location, both officers witnessed a third exchange, wherein they actually saw the transfer of money to Reed. The officers also observed Reed drop a bag containing small packets of a substance that later proved to be heroin. Finally, a custodial search revealed that Reed was in possession of $1,300 grouped into $100 bundles. We believe that this evidence overwhelmingly supports defendant's conviction.

However, even if the alleged errors cited by Reed were not waived, we would not find that reversal of his conviction was warranted. Prosecutors are afforded considerable latitude in closing argument, the scope of which is left largely up to the trial court. (*People v. Hawkins* (1993), 243 Ill. App. 3d 210.) A prosecutor's remarks will constitute reversible error only when it can be said that, but for the

remarks, the jury may have reached a different result. *People v. Lawler* (1990), 194 Ill. App. 3d 547, 551 N.E.2d 799.

In the first instance, even if we were to find that the prosecutor's description of Reed as a businessman dealing in the sale of drugs exceeded the bounds of proper prosecutorial comment and that, as such, it was not a reasonable inference drawn from the evidence, as the State contends, we would have to find that the comment was harmless. In light of the overwhelming evidence presented against Reed, it is highly unlikely that the State's remarks contributed to Reed's conviction.

With regard to Reed's other assertion of improper argument, we acknowledge that a prosecutor may not distort the burden of proof by erroneously instructing the jury on what it must find in order to convict a defendant. (*People v. Wilson* (1990), 199 Ill. App. 3d 792, 557 N.E.2d 571.) Also, it is clearly a misstatement of law for a prosecutor to incorrectly argue to the jury that it must find that the State's witnesses were lying in order to acquit the defendant. (*People v. Ridley* (1990), 199 Ill. App. 3d 487, 557 N.E.2d 378; *People v. Pegram* (1987), 152 Ill. App. 3d 656, 504 N.E.2d 958.) However, under the circumstances of this case we find that no error occurred.

Defendant, both at trial and on review, continually characterizes the case as a classic credibility contest, recognizing that the State's case and his defense were completely contradictory. Furthermore, all of the complained-of comments occurred during rebuttal after defense counsel, in his own closing argument, suggested to the jury that police officers are not beyond reproach, that they may be overzealous in their effort to ferret out crime and that they must make arrests in order to get promoted. In fact, defense counsel's entire argument suggested that the two arresting officers were lying and that the only reason Reed was arrested was to justify an unreasonable stop and search. At one point defense counsel stated: "If you believe the story that police gave you to justify their conduct, then you find my client guilty."

It was in response to this defense argument that the prosecutor stated in rebuttal that "defendant is telling you that this is a police frame." The prosecutor then went on to explore the reasonableness of this defense proposition, during the course of which the prosecutor stated:

> "If you are going to believe that that's a police frame, you are going to have to believe that Officer Baez and Officer Chambers work in a district where they have to make up crime

and let real drug dealers go free so that they can make arrests and that is absolutely unreasonable."

■■ Read in context of all the closing statements, both State and defense, we must conclude that the prosecutor's remark was not error. The prosecutor is entitled to respond to defendant's argument which attacks his case and witnesses. (*People v. Lash* (1993), 252 Ill. App. 3d 239.) In this case defense counsel's entire closing argument attempted to show how and why the State's witnesses were lying. By doing so, the defense invited the prosecutor to respond in kind. Reed cannot now claim that he was unfairly prejudiced by the comments he so invited.

In his final issue, Reed raises the argument of last resort relied upon by so many defendants when all else fails, *i.e.*, ineffectiveness of trial counsel. Ever since the sixth amendment was applied to the States by the United States Supreme Court, incompetency of counsel has replaced the hacksaw as the favored tool for escape from the prison cell.

In this case, citing to the seminal case of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, defendant contends that his counsel was "grossly and prejudicially incompetent in his representation" thereby denying him of "his constitutional right to the effective assistance of counsel." Specifically, Reed contends that his trial counsel failed to impeach the two police officers with certain "inconsistencies" in their police report, namely, that they failed to mention in the written police report that they used binoculars, that they failed to note that Reed placed the crumpled $20 bill in his left pocket, that they failed to note that Reed *simultaneously* put the baggie in his *right* pocket and that they failed to note that Reed *turned away before dropping the bag* to the ground.

Reed also contends that he was "ambushed" by the prosecutor's improper closing remarks which were unobjected to by counsel and that counsel failed to preserve the "most compelling issue in this case: whether the court improperly allowed the admission of a piece of physical evidence [the $20 bill] pursuant to a hopelessly broken chain of custody." Reed argues that, given the "closeness of this case," these errors and omissions, individually or cumulatively, "undermined the reliability of the outcome of this case." Finally, Reed argues that his counsel failed to argue his post-trial motion for new trial.

It is well settled that to advance a claim of ineffectiveness of counsel a defendant must show more than that his counsel committed certain errors. Defendant must show that his attorney's performance fell below an objective standard of reasonableness, and that, but for

counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) There is a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) Based upon these well-settled principles we must reject defendant's claim.

Initially we note that defendant's appellate counsel continually characterizes this case as a closely balanced one, citing the fact that the jury deliberated for nearly four hours before finding Reed guilty as support for this contention. We, however, do not agree that this case was a close call. As explained above, the evidence of defendant's guilt was considerable.

■ Secondly, we do not agree that trial counsel's conduct was faulty because he did not cross-examine the police officers about their failure to include various details of Reed's arrest in their written report. The "omissions" in the police report alleged by defendant do not amount to "inconsistencies" which needed to be pointed out to the jury by trial counsel. A police report is meant to be a summary, not a blow-by-blow chronology of what occurred.

In addition, as discussed earlier, the $20 bill was not nearly the key piece of evidence that appellate counsel would have this court believe, so that trial counsel's failure to object to the admission of this evidence in the post-trial motion did not prejudice the outcome of Reed's case in any way. Finally, the record shows that on October 29, 1991, defendant's counsel did bring the post-trial motion to the court's attention, albeit without argument from either side, and the motion was denied.

For all the reasons stated above, we find that Gerald Reed was not denied a fair trial. We affirm Reed's jury conviction and sentence on the charge of possession of a controlled substance with the intent to deliver.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.